# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

TER BEEK v CITY OF WYOMING

Docket No. 145816. Argued October 10, 2013 (Calendar No. 8). Decided February 6, 2014.

John Ter Beek, a resident of the city of Wyoming, filed an action in the Kent Circuit Court against the city, seeking to have a city zoning ordinance declared void and an injunction entered prohibiting its enforcement. The ordinance generally prohibited uses that were contrary to federal law, state law, or local ordinance, and permitted punishment of violations by civil sanctions. Ter Beek was a qualifying patient and held a registry identification card under the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq*. He wished to grow and use marijuana for medical purposes in his home and argued that § 4(a) of the MMMA, MCL 333.26424(a), which provides that registered qualifying patients shall not be subject to arrest, prosecution, or penalty in any manner for certain medical use of marijuana in accordance with the act, preempted the ordinance. Both parties moved for summary disposition. Ter Beek argued that because the federal controlled substances act (CSA), 21 USC 801 *et seq*., prohibited the use, manufacture, or cultivation of marijuana, the ordinance likewise prohibited the use, manufacture, or cultivation of marijuana for medical use and therefore conflicted with and was preempted by the MMMA. The city argued instead that the CSA preempted the MMMA. The court, Dennis B. Leiber, J., granted summary disposition in favor of the city, agreeing that the CSA preempted the MMMA. Ter Beek appealed. The Court of Appeals, SHAPIRO, P.J., and HOEKSTRA and WHITBECK, JJ., reversed, concluding that the ordinance conflicted with § 4(a) of the MMMA and that the CSA did not preempt § 4(a) because it was possible to comply with both statutes simultaneously and the state-law immunity for certain medical marijuana patients under § 4(a) did not stand as an obstacle to the federal regulation of marijuana use. 297 Mich App 446 (2012). The Supreme Court granted the city leave to appeal. 493 Mich 957 (2013).

In a unanimous opinion by Justice MCCORMACK, the Supreme Court *held*:

The federal controlled substances act does not preempt § 4(a) of the MMMA, but § 4(a) preempts the ordinance because the ordinance directly conflicts with the MMMA.

1. The Supremacy Clause of the United States Constitution, US Const, art VI, cl 2, invalidates state laws that interfere with or are contrary to federal law. Under 21 USC 903, which specifically addresses the CSA's preemption of state statutes, the relevant inquiry is whether there is a positive conflict between the federal and state statutes so that the two cannot consistently stand together. Such a conflict can arise when it is impossible to comply with both

the federal and the state requirements or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

2. The CSA does not preempt § 4(a) on the ground of impossibility preemption. Impossibility preemption requires more than the existence of a hypothetical or potential conflict. It results when state law requires what federal law forbids or vice versa. It is not impossible to comply with both the CSA and § 4(a) of the MMMA. The CSA makes manufacture, distribution, or possession of marijuana a criminal offense under federal law. Section 4(a) of the MMMA does not require commission of that offense, however, nor does it prohibit punishment under federal law. Instead, if certain individuals choose to engage in MMMA-compliant medical use of marijuana, § 4(a) provides them a limited state-law immunity from arrest, prosecution, or penalty, an immunity that could not and does not purport to prohibit the federal criminalization of, or punishment for, that conduct.

3. Section 4(a) does not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the CSA, and the CSA accordingly does not preempt § 4(a) on that ground. A state law presents an obstacle to a federal law if the purpose of the federal law cannot otherwise be accomplished. Under the CSA, Congress categorized marijuana as a Schedule I controlled substance, thereby designating it as contraband for any purpose and indicating that it has no acceptable medical uses. Michigan also has designated marijuana as a Schedule 1 controlled substance, and its possession, manufacture, and delivery remain punishable offenses under Michigan law. In enacting the MMMA, however, the people of the state chose to part ways with Congress only regarding the scope of acceptable medical use of marijuana, allowing a limited class of individuals to engage in certain uses in an effort to provide for the health and welfare of Michigan citizens. While the MMMA and the CSA differ with respect to the medical use of marijuana, the limited state-law immunity for that use under § 4(a) does not frustrate the CSA's operation or prevent its purpose from being accomplished. The immunity does not purport to alter the CSA's federal criminalization of marijuana or interfere with or undermine federal enforcement of that prohibition. Moreover, by expressly declining in 21 USC 903 to occupy the field of regulating marijuana, the CSA explicitly contemplates a role for the states in that regard, and there is no indication that the purpose or objective of the CSA was to require states to enforce its prohibitions.

4. The ordinance is preempted by § 4(a). Under Const 1963, art 7, § 22, a municipality's power to adopt resolutions and ordinances relating to its municipal concerns is subject to the Constitution and the law. A municipality is therefore precluded from enacting an ordinance if the ordinance directly conflicts with the state's statutory scheme or if the statutory scheme preempts the ordinance by occupying the field of regulation that the municipality seeks to enter, to the exclusion of the ordinance, even if there is no direct conflict between the two schemes of regulation. A direct conflict exists when the ordinance permits what the statute prohibits or the ordinance prohibits what the statute permits. The city's ordinance directly conflicts with the MMMA by permitting what the MMMA expressly prohibits: the imposition of any penalty, including a civil one, on a registered qualifying patient whose medical use of marijuana falls within the scope of the immunity granted under § 4(a).

Court of Appeals' judgment affirmed, grant of summary disposition in favor of the city reversed, and case remanded to the circuit court for entry of summary disposition in favor of Ter Beek.

©2014 State of Michigan

# Opinion

Chief Justice:          Justices:

Robert P. Young, Jr.    Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

FILED FEBRUARY 6, 2014

S T A T E   O F   M I C H I G A N

SUPREME COURT

JOHN TER BEEK,

        Plaintiff-Appellee,

v                                                    No. 145816

CITY OF WYOMING,

        Defendant-Appellant.

BEFORE THE ENTIRE BENCH

McCORMACK, J.

The Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.*, enacted pursuant to a voter initiative in November 2008, affords certain protections under state law for the medical use of marijuana in the state of Michigan. Among them is § 4(a) of the MMMA, which immunizes registered qualifying patients from "penalty in any manner" for specified MMMA-compliant medical marijuana use. MCL 333.26424(a). At issue here is the relationship between this immunity, the federal prohibition of marijuana under the controlled substances act (CSA), 21 USC 801 *et seq.*,

and a local zoning ordinance adopted by the city of Wyoming which prohibits and subjects to civil sanction any land "[u]ses that are contrary to federal law."  City of Wyoming Code of Ordinances, § 90-66.  As set forth below, we agree with the Court of Appeals that the ordinance directly conflicts with, and is preempted by, § 4(a) of the MMMA, and that § 4(a) is not preempted by the federal CSA.  Accordingly, we affirm the Court of Appeals' judgment.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In 2010, approximately two years after the MMMA went into effect, defendant, the city of Wyoming (the City), adopted an ordinance (the Ordinance) amending the zoning chapter of the Wyoming city code to add the following provision:

> Uses not expressly permitted under this article are prohibited in all districts.  Uses that are contrary to federal law, state law or local ordinance are prohibited.

City of Wyoming Code of Ordinances, § 90-66.  Under the city code, violations of the Ordinance constitute municipal civil infractions punishable by "civil sanctions, including, without limitation, fines, damages, expenses and costs," City of Wyoming Code of Ordinances, § 1-27(a) to (b), and are also subject to injunctive relief, City of Wyoming Code of Ordinances, § 1-27(g).

Plaintiff, John Ter Beek, lives in the City and is a qualifying patient under the MMMA who possesses a state-issued registry identification card.[1]  Upon the City's

---

[1] The MMMA specifies the circumstances under which a person can register with the state as a qualifying medical marijuana patient.  Upon satisfaction of these criteria, the state issues a registry identification card to the qualifying patient.  See MCL 333.26426.

2

adoption of the Ordinance, Ter Beek filed the instant lawsuit in circuit court. Ter Beek alleges that he wishes to grow, possess, and use medical marijuana in his home in accordance with the MMMA. The Ordinance, however, by its incorporation of the CSA's federal prohibition of marijuana, prohibits and penalizes such conduct. This, Ter Beek contends, impermissibly contravenes § 4(a) of the MMMA, which provides that registered qualifying patients "shall not be subject to arrest, prosecution, or penalty in any manner . . . for the medical use of marihuana in accordance with" the MMMA. Accordingly, Ter Beek seeks a declaratory judgment that the Ordinance is preempted by the MMMA and a corresponding injunction prohibiting the City from enforcing the Ordinance against him for the medical use of marijuana in compliance with the MMMA.[2]

The parties filed cross-motions for summary disposition pursuant to MCR 2.116(C)(10), disputing whether the Ordinance is preempted by the MMMA and whether the MMMA is preempted by the CSA. The circuit court granted summary disposition in favor of the City, concluding that the MMMA is preempted by the CSA. Ter Beek appealed by right in the Court of Appeals, which reversed the circuit court's grant of summary disposition in favor of the City and remanded the case for entry of summary disposition in favor of Ter Beek. *Ter Beek v Wyoming*, 297 Mich App 446; 823 NW2d 864 (2012). The Court of Appeals first concluded that the Ordinance directly conflicts with, and is thus preempted by, § 4(a) of the MMMA, because it purports to penalize the medical use of marijuana in contravention of § 4(a)'s grant of immunity from such

---

[2] Ter Beek has not been charged with violating the Ordinance or subjected to any enforcement action in connection with it. The City unsuccessfully challenged his standing before the circuit court, and has abandoned that challenge on appeal.

3

penalties. The Court of Appeals then concluded that § 4(a) is not preempted by the federal CSA, reasoning that it is possible to comply with both statutes simultaneously and that § 4(a)'s state-law immunity for certain medical marijuana patients does not stand as an obstacle to the CSA's federal regulation of marijuana use or to the federal enforcement of same. The City sought leave to appeal, which we granted, to address the questions of state and federal preemption. *Ter Beek v Wyoming*, 493 Mich 957 (2013).[3]

## II. STANDARD OF REVIEW

Whether § 4(a) of the MMMA preempts the Ordinance, and whether the CSA preempts § 4(a), are questions of law which we review de novo. *Detroit v Ambassador Bridge Co*, 481 Mich 29, 35; 748 NW2d 221 (2008); *Mich Coalition For Responsible Gun Owners v City of Ferndale*, 256 Mich App 401, 405; 662 NW2d 864 (2003). We also review de novo the decision to grant or deny summary disposition, *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998), and review for clear error factual findings in support of that decision, *Ambassador Bridge*, 481 Mich at 35.

As we have recently explained, the intent of the electors governs the interpretation of voter-initiated statutes such as the MMMA, just as the intent of the Legislature governs the interpretation of legislatively enacted statutes. *People v Bylsma*, 493 Mich

---

[3] We also granted permission for interested persons or groups to move to submit briefs amicus curiae. The City of Livonia, the Michigan Municipal League, the Prosecuting Attorneys Association of Michigan, and the State Bar of Michigan Public Corporation Law Section submitted briefs in support of the City; the Cannabis Attorneys of Mid-Michigan, and the Cato Institute, the Drug Policy Alliance, and Law Enforcement Against Prohibition submitted briefs in support of Ter Beek.

17, 26; 825 NW2d 543 (2012). The first step when interpreting a statute is to examine its plain language, which provides the most reliable evidence of intent. If the statutory language is unambiguous, no further judicial construction is required or permitted because we must conclude that the electors intended the meaning clearly expressed. *Id.*

## III. ANALYSIS

### A. KEY PROVISIONS OF THE MMMA, THE CSA, AND THE ORDINANCE

The questions of state and federal preemption in this case arise from the differing treatment of medical marijuana use under the MMMA and the CSA. As noted, § 4(a) of the MMMA provides, in relevant part:

> A qualifying patient who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for the medical use of marihuana in accordance with this act . . . . [MCL 333.26424(a).]

The MMMA defines "medical use" as "the acquisition, possession, cultivation, manufacture, use, internal possession, delivery, transfer, or transportation of marihuana or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition." MCL 333.26423(f).

The CSA, meanwhile, contains no such immunity. Rather, it makes it "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21

5

USC 841(a)(1). The CSA classifies marijuana as a Schedule I controlled substance, 21 USC 810(c)(12), and thus largely prohibits its manufacture, distribution, or possession.[4]

The parties do not dispute that the Ordinance, by prohibiting all "[u]ses that are contrary to federal law," incorporates the CSA's prohibition of marijuana and makes certain violations of that prohibition both punishable by civil sanctions and subject to injunctive relief. Thus, an individual whose medical use of marijuana falls within the scope of § 4(a)'s immunity from "penalty in any manner" may nonetheless be subject to punishment under the Ordinance for that use.

### B. THE CSA DOES NOT PREEMPT § 4(a) OF THE MMMA

As noted, the circuit court rejected Ter Beek's challenge to the Ordinance because it held that § 4(a) of the MMMA is preempted by the CSA. The Court of Appeals disagreed. Although raised under the particular circumstances of this case as a defense, we address this question first, and hold that the CSA does not preempt § 4(a).

Federal preemption of state law is grounded in the Supremacy Clause of the United States Constitution, US Const, art VI, cl 2, which "invalidates state laws that 'interfere with, or are contrary to,' federal law." *Hillsborough Co v Automated Med Labs, Inc*, 471 US 707, 712; 105 S Ct 2371; 85 L Ed 2d 714 (1985), quoting *Gibbons v Ogden*, 22 US (9 Wheat) 1, 211; 6 L Ed 23 (1824). When a state law is preempted by

---

[4] The only exception to this prohibition is for research projects approved by the federal government. See 21 USC 823(f); *United States v Oakland Cannabis Buyers' Coop*, 532 US 483, 490; 121 S Ct 1711; 149 L Ed 2d 722 (2001).

federal law, the state law is "without effect." *Maryland v Louisiana*, 451 US 725, 746; 101 S Ct 2114; 68 L Ed 576 (1981).

" '[T]he purpose of Congress is the ultimate touchstone in every pre-emption case.' " *Wyeth v Levine*, 555 US 555, 565; 129 S Ct 1187; 173 L Ed 51 (2009), quoting *Medtronic, Inc v Lohr*, 518 US 470, 485; 116 S Ct 2240; 135 L Ed 2d 700 (1996). Furthermore, "[i]n all pre-emption cases, and particularly in those in which Congress has legislated . . . in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth*, 555 US at 565 (citations and quotation marks omitted). See also *Maryland*, 451 US at 746 ("Consideration under the Supremacy Clause starts with the basic presumption that Congress did not intend to displace state law."). The areas of public health and safety are among those traditionally left to the states. *Gonzales v Oregon*, 546 US 243, 270; 126 S Ct 904; 163 L Ed 2d 748 (2006). If the federal statute contains a clause expressly addressing preemption, "we 'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.' " *Chamber of Commerce v Whiting*, 563 US ___, ___; 131 S Ct 1968, 1977; 179 L Ed 2d 1031 (2011), quoting *CSX Transp, Inc v Easterwood*, 507 US 658, 664; 113 S Ct 1732; 123 L Ed 2d 387 (1993). Where such a clause is ambiguous, and the federal statute at issue pertains to an area of traditional state regulation, we "have a duty to accept the reading [of the clause] that disfavors pre-emption." *Bates v Dow Agrosciences LLC*, 544 US 431, 449; 125 S Ct 1788; 161 L Ed 2d 687 (2005). Tie, in that case, goes to the state.

With those principles in mind, we look to the CSA, which expressly provides:

7

No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together. [21 USC 903.]

Accordingly, in assessing whether § 4(a) of the MMMA is preempted by the CSA, the relevant inquiry is whether there is a "positive conflict" between the two statutes such that they "cannot consistently stand together."

Such a conflict can arise when it is impossible to comply with both federal and state requirements, *Mut Pharm Co, Inc v Bartlett*, 570 US ___, ___; 133 S Ct 2466, 2473; 186 L Ed 2d 607 (2013), or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, *Hillsborough*, 471 US at 713. See also *Wyeth*, 555 US at 567-581 (applying this preemption standard to a federal statute providing that it did not preempt state law unless there was a "direct and positive conflict" between it and state law). We find neither such conflict here.

First, we do not find it impossible to comply with both the CSA and § 4(a) of the MMMA. "Impossibility pre-emption is a demanding defense," *Wyeth*, 555 US at 573, and requires more than "[t]he existence of a hypothetical or potential conflict," *Rice v Norman Williams Co*, 458 US 654, 659; 102 S Ct 3294; 73 L Ed 1042 (1982). Such impossibility results when state law requires what federal law forbids, or vice versa. See, e.g., *Mut Pharm*, 570 US at ___; 133 S Ct at 2476-2477; *PLIVA, Inc v Mensing*, 564 US ___, ___; 131 S Ct 2567, 2577-2578; 180 L Ed 2d 580 (2011); *Geier v American Honda Motor Co, Inc*, 529 US 861, 873; 120 S Ct 1913; 146 L Ed 2d 914 (2000); *Barnett Bank of Marion Co, NA v Nelson*, 517 US 25, 31; 116 S Ct 1103; 134 L Ed 2d 237 (1996).

8

The CSA criminalizes marijuana, making its manufacture, distribution, or possession a punishable offense under federal law. Section 4(a) of the MMMA does not require anyone to commit that offense, however, nor does it prohibit punishment of that offense under federal law. Rather, the MMMA is clear that, if certain individuals choose to engage in MMMA-compliant medical marijuana use, § 4(a) provides them with a limited *state-law* immunity from "arrest, prosecution, or penalty in any manner"—an immunity that does not purport to prohibit federal criminalization of, or punishment for, that conduct. See MCL 333.26427(a) ("The medical use of marihuana is allowed under state law to the extent that it is carried out in accordance with the provisions of this act."); see also MCL 333.26422 (noting that "approximately 99 out of every 100 marihuana arrests in the United States are made under state law, rather than under federal law," that "changing state law will have the practical effect of protecting from arrest the vast majority of seriously ill people who have a medical need to use marihuana," and that "[a]lthough federal law currently prohibits any use of marihuana except under very limited circumstances, states are not required to enforce federal law or prosecute people for engaging in activities prohibited by federal law"). Nor, of course, could the MMMA prohibit such federal regulation and enforcement. See *United States v Hicks*, 722 F Supp 2d 829, 833 (ED Mich, 2010) ("It is indisputable that state medical-marijuana laws do not, and cannot, supercede federal laws that criminalize the possession of marijuana."), citing, *inter alia*, *Gonzales v Raich*, 545 US 1, 29; 125 S Ct 2195; 162 L Ed 2d 1 (2005).[5]

---

[5] The City contends that these cases, as well as *Oakland Cannabis*, 532 US 483, support a finding of federal preemption in this case. These cases, however, indicate that state medical marijuana laws cannot be used to inhibit federal enforcement of the CSA; none

The City objects that § 4(a) forces it, as well as the state of Michigan and every other municipality therein, to "ignore" the CSA. But that is not the precise question. While, as discussed at greater length below, § 4(a) does prevent the City from fully incorporating the CSA's prohibition of marijuana into its own local enforcement scheme, it does not require that the City violate that federal prohibition. Neither does the CSA require that the City, or the state of Michigan, enforce that prohibition. In fact, it is well established that, " '[e]ven where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power directly to compel the states to require or prohibit those acts.' " *Printz v United States*, 521 US 898, 924; 117 S Ct 2365; 138 L Ed 2d 914 (1997), quoting *New York v United States*, 505 US 144, 166; 112 S Ct 2408; 120 L Ed 2d 120 (1992). We do not find it impossible to comply with both the CSA and § 4(a) of the MMMA.

We likewise hold that § 4(a) does not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the CSA. *Hillsborough*, 471 US at 713. A state law presents such an obstacle to a federal law " '[i]f the purpose of the

---

of them suggests that such laws cannot exempt from penalty under state law certain conduct that remains illegal under federal law. See *Raich*, 545 US at 15-33 (holding that the federal government had constitutional authority to prohibit and prosecute under federal law the cultivation of marijuana, regardless of whether such activity violated state law); *Oakland Cannabis*, 532 US at 486-495 (holding that, in a federal prosecution under the CSA, there was no medical necessity defense available under federal law, regardless of whether that defense would be available under state law); *Hicks*, 722 F Supp 2d at 832-834 (holding that the federal defendant's compliance with the MMMA did not excuse his violation of the conditions of his federal supervised release). This line of authority thus fully comports with our holding here.

10

[federal law] cannot otherwise be accomplished—if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect.' " *Crosby v Nat'l Foreign Trade Council*, 530 US 363, 373; 120 S Ct 2288; 147 L Ed 2d 352 (2000), quoting *Savage v Jones*, 225 US 501, 533; 32 S Ct 715; 56 L Ed 1182 (1912). As the United States Supreme Court has stated, "[w]hat is a sufficient obstacle is a matter of judgment," to be assessed under the circumstances of the given case and "to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby*, 530 US at 373.

According to the Supreme Court in *Raich*, "[t]he main objectives of the CSA were to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances." 545 US at 12. "To effectuate these goals, Congress devised a closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA." *Id*. at 13. As noted, in devising that scheme, Congress categorized marijuana as a Schedule I controlled substance, thereby designating it "as contraband for *any* purpose" and indicating that it "has no acceptable medical uses." *Id*. at 27.

Michigan also designates marijuana as a Schedule 1 drug, and its possession, manufacture, and delivery remain punishable offenses under Michigan law. *People v Kolanek*, 491 Mich 382, 394; 817 NW2d 528 (2012). See also MCL 333.7212(1)(c), MCL 333.7401(2)(d), and MCL 333.7403(2)(d). In enacting the MMMA, however, the people of the State of Michigan chose to part ways with Congress only regarding the scope of acceptable medical use of marijuana, allowing "a limited class of individuals" to

11

engage in certain such use in "an 'effort for the health and welfare of [Michigan] citizens.' " *Kolanek*, 491 Mich at 393-394, quoting MCL 333.26422(c).

While the MMMA and CSA differ with respect to medical use of marijuana, § 4(a)'s limited state-law immunity for such use does not frustrate the CSA's operation nor refuse its provisions their natural effect, such that its purpose cannot otherwise be accomplished. *Crosby*, 530 US at 373. As the Court of Appeals duly recognized and the MMMA itself makes clear, see MCL 333.26422 and MCL 333.26427(a), this immunity does not purport to alter the CSA's federal criminalization of marijuana, or to interfere with or undermine federal enforcement of that prohibition. The CSA, meanwhile, by expressly declining to occupy the field of regulating marijuana, 21 USC 903, "explicitly contemplates a role for the States" in that regard, *Oregon*, 546 US at 251, and there is no indication that the CSA's purpose or objective was to require states to enforce its prohibitions. Indeed, as noted, Congress lacks the constitutional authority to impose such an obligation. As a result, we fail to see how § 4(a) creates, as the City claims, "significant and unsolvable obstacles to the enforcement of the" CSA, such that the former is preempted by the latter.

In reaching the opposite conclusion, both the City and the circuit court rely heavily on *Mich Canners & Freezers Ass'n v Agricultural Marketing & Bargaining Bd*, 467 US 461; 104 S Ct 2518; 81 L Ed 2d 399 (1984), and *Emerald Steel Fabricators, Inc v Bureau of Labor & Indus*, 348 Or 159; 230 P3d 518 (2010). Such reliance, however, is misplaced. At issue in *Michigan Canners* was whether Michigan's Agricultural Marketing and Bargaining Act (the Michigan Act) was preempted by the federal Agricultural Fair Practices Act (AFPA). In order to protect individual producers of

12

agricultural commodities from coercion by associations of producers, the AFPA prohibited those associations from "engag[ing] in practices that interfere with a producer's freedom to choose whether to bring his products to market himself or to sell them through" an association. *Mich Canners*, 467 US at 464. The Michigan Act, however, provided that, under certain circumstances, a producers' association could receive state accreditation to become the exclusive bargaining agent for all producers of a given commodity; when an association was so accredited, "all producers of that commodity, regardless of whether they have chosen to become members of the association, must pay a service fee to the association and must abide by the terms of the contracts the association negotiates with processors." *Id*. at 467-468. The United States Supreme Court concluded that the Michigan Act was preempted by the AFPA because the Michigan Act, by compelling individual producers to effectively join and be bound by the actions of accredited associations, "empowers producers' associations to do precisely what the federal Act forbids them to do" and "imposes on the producer the same incidents of association membership with which Congress was concerned in enacting" the AFPA. *Id*. at 478. In other words, the AFPA guaranteed individual producers the freedom to choose whether to join associations; the Michigan Act, however, denied them that right.

Such circumstances are not present here. Section 4(a) simply provides that, under state law, certain individuals may engage in certain medical marijuana use without risk of penalty. As previously discussed, while such use is prohibited under federal law, § 4(a) does not deny the federal government the ability to enforce that prohibition, nor does it purport to require, authorize, or excuse its violation. Granting Ter Beek his requested

13

relief does not limit his potential exposure to federal enforcement of the CSA against him, but only recognizes that he is immune under state law for MMMA-compliant conduct, as provided in § 4(a). Unlike in *Michigan Canners*, the state law here does not frustrate or impede the federal mandate.

*Emerald Steel* is also distinguishable, never mind nonbinding. At issue in that case was whether the plaintiff's medical use of marijuana constituted an "illegal use of drugs" under a state statutory provision governing his claim for employment discrimination. The statute, in turn, provided that "illegal use of drugs" did not include "uses authorized under the [CSA] or under other provisions of state or federal law." *Emerald Steel*, 348 Or at 170, quoting Or Rev Stat 659A.122(2). The plaintiff argued that his medical marijuana use was not an "illegal use of drugs" under the statute because it was authorized under the Oregon Medical Marijuana Act, which provided that certain individuals, under certain circumstances, "may engage in . . . the medical use of marijuana." Or Rev Stat 475.306(1). The Oregon Supreme Court rejected this position, concluding that, to the extent the Oregon Medical Marijuana Act authorized the use of marijuana, it was preempted by the CSA. *Emerald Steel*, 348 Or at 190. The decision made clear, however, that it did "not hold that the [CSA] preempts provisions of the Oregon Medical Marijuana Act that exempt the possession, manufacture, or distribution of medical marijuana from state criminal liability." *Id*. See also, e.g., *id*. at 171-172 nn 11 and 12. Thus, *Emerald Steel* addresses a substantively different question than the one presently before us—whether the CSA preempts § 4(a)'s limited state-law immunity

14

from penalty for certain medical marijuana use—and we see nothing in its answer that would alter our own.[6]

In sum, there is no "positive conflict" between the CSA and § 4(a) of the MMMA such that the two "cannot consistently stand together," 21 USC 903: it is not impossible to comply with both the CSA's federal prohibition of marijuana and § 4(a)'s limited state-law immunity for certain medical marijuana use, and § 4(a) does not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the CSA. *Mut Pharm*, 570 US at ___, ___; 133 S Ct at 2473, 2476-2477; *Hillsborough*, 471 US at 713. As such, the CSA does not preempt § 4(a) of the MMMA.

## C. THE ORDINANCE IS PREEMPTED BY § 4(a) OF THE MMMA

Having found that the CSA does not preempt § 4(a) of the MMMA, we turn next to whether the Ordinance, as applied to Ter Beek, is preempted by § 4(a). We agree with the Court of Appeals that it is. The required analysis on this point is not complex.

---

[6] Furthermore, we have misgivings, mildly put, about *Emerald Steel*'s reasoning. In particular, in finding preemption, the Oregon Supreme Court characterized *Michigan Canners* as a case of "state law permit[ting] what federal law prohibits," and reasoned by analogy that "[a]ffirmatively authorizing a use that federal law prohibits stands as an obstacle to the implementation and execution of the full purposes and objectives of the" CSA. *Emerald Steel*, 348 Or at 177-178. *Michigan Canners*, however, does not stand for the broad proposition that, if a state law permits something a federal law prohibits, it is preempted. Instead, *Michigan Canners* involved a state law that not only permitted what federal law prohibited, but also required that certain federal guarantees be denied. Indeed, the Oregon Supreme Court has since moderated this aspect of its analysis, clarifying that "*Emerald Steel* should not be construed as announcing a stand-alone rule that any state law that can be viewed as 'affirmatively authorizing' what federal law prohibits is preempted." *Willis v Winters*, 350 Or 299, 310 n 6; 253 P3d 1058 (2011).

15

Under the Michigan Constitution, the City's "power to adopt resolutions and ordinances relating to its municipal concerns" is "subject to the constitution and the law." Const 1963, art 7, § 22. As this Court has previously noted, "[w]hile prescribing broad powers, this provision specifically provides that ordinances are subject to the laws of this state, i.e., statutes." *AFSCME v Detroit*, 468 Mich 388, 410; 662 NW2d 695 (2003). The City, therefore, "is precluded from enacting an ordinance if . . . the ordinance is in direct conflict with the state statutory scheme, or . . . if the state statutory scheme preempts the ordinance by occupying the field of regulation which the municipality seeks to enter, to the exclusion of the ordinance, even where there is no direct conflict between the two schemes of regulation." *People v Llewellyn*, 401 Mich 314, 322; 257 NW2d 902 (1977) (footnotes omitted). A direct conflict exists when "the ordinance permits what the statute prohibits or the ordinance prohibits what the statute permits." *Id.* at 322 n 4. Here, the Ordinance directly conflicts with the MMMA by permitting what the MMMA expressly prohibits—the imposition of a "penalty in any manner" on a registered qualifying patient whose medical use of marijuana falls within the scope of § 4(a)'s immunity.

The City disputes this characterization of the Ordinance, noting that while it permits the imposition of civil sanctions, it does not require them; instead, a violation of the Ordinance can be enforced through equitable relief such as a civil injunction. We agree with the Court of Appeals, however, that enjoining a registered qualifying patient from engaging in MMMA-compliant conduct unambiguously falls within the scope of penalties prohibited by § 4(a). For § 4(a) makes clear that individuals who satisfy the statutorily specified criteria "shall not be subject to . . . penalty in any manner," a prohibition which expressly includes "civil penalt[ies]." As the Court of Appeals noted,

16

the MMMA does not define "penalty," but that term is commonly understood to mean a "punishment imposed or incurred for a violation of law or rule . . . something forfeited." *Random House Webster's College Dictionary* (2000). See, e.g., *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999) ("Where, as here, the Legislature has not expressly defined terms used within a statute, we may turn to dictionary definitions to aid our goal of construing those terms in accordance with their ordinary and generally accepted meanings."). Under the Ordinance, individuals are subject to civil punishment for engaging in the medical use of marijuana in accordance with the MMMA; by the plain terms of § 4(a), the manner of that punishment—be it requiring the payment of a monetary sanction, or denying the ability to engage in MMMA-compliant conduct—is not material to the MMMA's immunity from it.

Nor do we agree with the City that our decision in *Michigan v McQueen*, 493 Mich 135; 828 NW2d 644 (2013), mandates a different outcome. In *McQueen*, this Court held that, because the defendants' business, a medical marijuana dispensary, was not being operated in accordance with the MMMA, it was properly enjoined as a public nuisance under MCL 600.3801.[7] *McQueen*, 493 Mich at 140. The City contends that, because the growth and cultivation of marijuana is a violation of the Ordinance, and violations of zoning ordinances constitute nuisances per se under the Michigan Zoning Enabling Act (MZEA), MCL 125.3407, *McQueen* permits the City's regulation through injunction. *McQueen*, however, affirmed the injunction of the defendants' business not

---

[7] MCL 600.3801(1)(c) provides that "[a] building, vehicle, boat, aircraft, or place is a nuisance if . . . [i]t is used for the unlawful manufacture, transporting, sale, keeping for sale, bartering, or furnishing of a controlled substance."

simply because it was a nuisance, but because it was a nuisance that fell outside the scope of conduct permitted under the MMMA. *McQueen* does not, as the City contends, authorize a municipality to enjoin a registered qualifying patient from engaging in medical use of marijuana in compliance with the MMMA, simply by characterizing that conduct as a zoning violation.

Furthermore, contrary to the City's suggestion, the fact that the Ordinance is a local zoning regulation enacted pursuant to the MZEA does not save it from preemption. The City stresses that the MZEA affords local municipalities a broad grant of authority to use their zoning powers to advance local interests, such as "public health, safety, and welfare." MCL 125.3201. The MMMA, however, provides in no uncertain terms that "[t]he medical use of marihuana is allowed under state law to the extent that it is carried out in accordance with" the MMMA, MCL 333.26427(a), and that "[a]ll other acts and parts of acts inconsistent with [the MMMA] do not apply to the medical use of marihuana," MCL 333.26427(e). The City contends that the MMMA does not express a sufficiently clear intent to supersede the MZEA, but we see no ambiguity in the MMMA's plain language to this effect. See *Bylsma*, 493 Mich at 26 (explaining that the MMMA's plain language provides the most reliable evidence of intent and that if this language is unambiguous, no further judicial construction is required or permitted because we must conclude that the electors intended the meaning clearly expressed). It is well accepted that when two legislative enactments seemingly conflict, the specific provision prevails over the more general provision. See, e.g., *Crane v Reeder*, 22 Mich 322, 334 (1871). Accordingly, the City cannot look to the MZEA to authorize or excuse

18

the Ordinance's contravention of the specific immunity for medical marijuana use provided under § 4(a) of the MMMA.[8]

The City also points to *Riverside v Inland Empire Patients Health & Wellness Ctr, Inc*, 56 Cal 4th 729; 156 Cal Rptr 3d 409; 300 P3d 494 (2013), in support of its position. In that case, the California Supreme Court found certain state medical marijuana laws did not preempt a local zoning ordinance. *Riverside*, however, is beside the point. At issue there was whether a local zoning ordinance prohibiting medical marijuana dispensaries within city limits was preempted by California's Compassionate Use Act (CUA) and Medical Marijuana Program Act (MMP). The California Supreme Court concluded that there was no preemption, as the CUA and MMP offered only a limited immunity from sanction under certain specified state criminal and nuisance statutes, thereby "signal[ing] that the *state* declines to regard the described acts as nuisances or criminal violations, and

---

[8] No more availing is the City's attempt to import certain zoning-related standards into our preemption analysis. The City, for instance, points to *Kyser v Kasson Twp*, 486 Mich 514, 521; 786 NW2d 543 (2010), which states that, when a citizen challenges a zoning ordinance on due process grounds, the "ordinance is presumed to be reasonable." The City also cites the MZEA's exclusionary zoning provision, MCL 125.3207, which requires a showing of "demonstrated need" for a certain land use in order to overcome a zoning ordinance's "effect of totally prohibiting the establishment of a land use within a local unit of government"—a need, the City contends, that Ter Beek cannot show, since he can likely procure marijuana for medical use in other municipalities. We do not see how these standards impact our assessment of whether the Ordinance is preempted by the state-law immunity from penalty provided by § 4(a) of the MMMA. The City seems to suggest that, for this immunity to attach, a registered qualifying patient must show a "demonstrated need" under MCL 125.3207 for his or her MMMA-compliant medical marijuana use. Neither § 4(a) nor any other provision of the MMMA, however, imposes or betrays a tolerance for such a condition with respect to the availability of its protections. Thus, to the extent the MZEA may be read to require such a showing for an individual to claim the immunity provided under § 4(a), it is inconsistent with and superseded by the MMMA. MCL 333.26427(e).

19

that the *state's* enforcement mechanisms will thus not be available against these acts." *Id.* at 762. As such, these "limited provisions" were found to "neither expressly or impliedly restrict or preempt the authority of individual local jurisdictions to choose otherwise for local reasons, and to prohibit collective or cooperative medical marijuana activities within their own borders." *Id.* The scope of § 4(a)'s immunity, however, is not similarly circumscribed; in prohibiting certain individuals from being "subject to . . . penalty in any manner," § 4(a) draws no distinction between state and local laws or penalties. We thus do not find *Riverside*'s reasoning instructive.

Lastly, the City stresses that the MMMA does not create an absolute right to grow and distribute marijuana. Correct. See *People v Kolanek*, 491 Mich 382, 394; 817 NW2d 528 (2012) ("The MMMA does *not* create a general right for individuals to use and possess marijuana in Michigan. Possession, manufacture, and delivery of marijuana remain punishable offenses under Michigan law."); *Bylsma*, 493 Mich at 32 (discussing *Kolanek*); *People v Koon*, 494 Mich 1, 5; 832 NW2d 724 (2013) ("The MMMA, rather than legalizing marijuana, functions by providing registered patients with immunity from prosecution for the medical use of marijuana."). Ter Beek, however, does not seek to assert any such general or absolute right. Nor does our conclusion recognize one. The Ordinance directly conflicts with the MMMA not because it generally pertains to marijuana, but because it permits registered qualifying patients, such as Ter Beek, to be penalized by the City for engaging in MMMA-compliant medical marijuana use. Section

20

4(a) of the MMMA expressly prohibits this. As such, the MMMA preempts the Ordinance to the extent of this conflict.[9]

## IV. CONCLUSION

For the foregoing reasons, we hold that the Ordinance is preempted by § 4(a) of the Michigan Medical Marijuana Act, which in turn is not preempted by the federal controlled substances act. Accordingly, we affirm the judgment of the Court of Appeals, reverse the circuit court's grant of summary disposition in favor of the City, and remand for entry of summary disposition in favor of Ter Beek.

Bridget M. McCormack
Robert P. Young, Jr.
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
David F. Viviano

---

[9] Contrary to the City's concern, this outcome does not "create a situation in the State of Michigan where a person, caregiver or a group of caregivers would be able to operate with no local regulation of their cultivation and distribution of marijuana." Ter Beek does not argue, and we do not hold, that the MMMA forecloses all local regulation of marijuana; nor does this case require us to reach whether and to what extent the MMMA might occupy the field of medical marijuana regulation.