*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF WARREN,

        Plaintiff-Appellant,

v

CLAYTON JAMERS BEZY,

        Defendant-Appellee.

UNPUBLISHED
May 16, 2019

No. 341639
Macomb Circuit Court
LC No. 2017-000111-AR

Before: REDFORD, P.J., and MARKEY and K. F. KELLY, JJ.

PER CURIAM.

This case concerns the ability of a city to enforce zoning regulations that affect medical marijuana cultivation. Plaintiff, the City of Warren, appeals by leave granted[1] the circuit court's order, affirming a decision by 37th District Court. The district court held that several zoning ordinances enacted by plaintiff were preempted by the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.*, a conclusion with which the circuit court agreed. Discerning no error, we affirm.

## I. BASIC FACTS

Defendant resides in Warren. He grows marijuana in his home, both for his own use and for the use of his patients, in accordance with the MMMA. Plaintiff cited defendant for three ordinance violations, all arising from his marijuana operation. Two of these violations stem from Warren Zoning Ordinance, § 5.01(m). This ordinance, which applies to the R-1-A, single-family residential district, prohibits marijuana production and storage unless a number of requirements are satisfied:

---

[1] *City of Warren v Bezy*, unpublished order of the Court of Appeals, entered May 15, 2018 (Docket No. 341639).

(m) Growing, storing, or cultivating marihuana or processing or manufacturing marihuana into a usable form, except that such uses may be permitted if all of the following conditions are satisfied:

(1) The use, storage, cultivation, growth, manufacturing or processing of the medical marihuana is in compliance with the Michigan Medical Marihuana Act, MCL 333.264231 *et seq.*, as amended, including but not limited to the requirements stated in Section 4, MCL 333.26424, as amended, and in accordance with all applicable ordinances and regulations, including the Fire Protection Code and Article VI of Chapter 22 of the Code of Ordinances;

*(2) The dwelling is registered with the department of buildings and safety engineering and has passed an administrative safety inspection for electrical, heating, plumbing, storage, and disposal of materials or water used in connection with the marihuana;*

*(3) The dwelling has a filtration for its ventilation system or unit to prevent the emission of odors upon neighboring properties, and which has been inspected by and meets with the satisfaction of the Department of Buildings and Safety Engineering;*

(4) No more than one (1) person may grow, cultivate, manufacture, store or process marihuana in each dwelling structure;

(5) The growth, cultivation, manufacture, or storage of medical marihuana occurs solely at the property under exclusive control, through written lease, contract or deed in favor of a qualifying patient who occupies the property as his or her principal residence;

(6) The legal owner or property manager of the residential dwelling authorizes the use, storage, cultivation, growth, or processing of the marihuana;

(7) No more than one (1) person per residential dwelling may cultivate, grow, manufacture or process marihuana on the premises who otherwise meets the standards in this section.

(8) The uses permitted in this subsection (m) are allowed only in the residential districts classified as R-1-A, R-1-B, R-1-C, R-1-P, R-2 and R-3, unless expressly permitted elsewhere in this Code.

(9) No use, storage, growth, cultivation or processing of marihuana is permitted in Downtown Center District as described in Appendix A of the Code of Zoning Ordinances, Section 21-B. [Warren Zoning Ordinances, § 5.01(m) (emphasis added).]

Defendant was cited for (1) failing to register with defendant for safety inspections, in violation of Warren Zoning Ordinance, § 5.01(m)(2); (2) emitting a noxious marijuana odor, in violation of Warren Zoning Ordinance, § 5.01(m)(3) and plaintiff's nuisance ordinance, Warren

Ordinances, § 21-92; and (3) operating a business in violation of any applicable law, a misdemeanor offense under Warren Zoning Ordinance, §4.01(c) ("Unless otherwise provided, a person operating a business in violation of any applicable law is guilty of a misdemeanor punishable by imprisonment for not more than ninety (90) days or a fine of not more than five hundred dollars ($500.00), or both.").

There appears to be no genuine dispute that defendant's operation complies with the MMMA. Therefore, in response to these citations, defendant argued in the district court that the MMMA preempted the cited ordinances, and thus, his violations must be dismissed. Defendant contended that he was entitled to immunity under MCL 333.26424 ("Section 4"), and that the city's ordinances directly conflicted with the MMMA by imposing penalties on an individual who was operating in full compliance with the MMMA. The district court agreed. Relying on *Ter Beek v City of Wyoming*, 495 Mich 1; 846 NW2d 531 (2014) (*Ter Beek II*), the district court held that the ordinances were preempted by the MMMA, and dismissed the citations.

Defendant appealed to the circuit court. The circuit court agreed that there was a direct conflict between the MMMA and the city's ordinances, in that the MMMA prohibited the imposition of a penalty in any manner against one who was entitled to Section 4 immunity, while the ordinances would result in the imposition of a penalty against an individual entitled to such immunity. The circuit court went on to explain that the MMMA allowed a caregiver to keep marijuana plants in an "enclosed, locked facility," and that this phrase was defined by MCL 333.26423. The definition did not include any particular electrical, heating, or plumbing requirements, nor did it require any air or odor filtration. Relying on the maxim *expressio unius est exclusio alterius*, the court concluded that the extensive definition of an enclosed, locked facility was the complete statement regarding how marijuana could be kept. The circuit court concluded that the city's ordinances conflicted with the MMMA by expanding on the statute's requirements. It explained that the MMMA allowed caregivers to grow marijuana at their residence, and imposed just one limitation: that separating plant resin from the marijuana plant cannot be performed by butane extraction. See MCL 333.26427(b)(6). In light of that statutory provision, the court concluded that the citation for operating a business from home in violation of applicable law could not stand. Because the MMMA allowed caregivers to keep marijuana plants on their properties, the ordinance was in conflict because it would seem to prohibit such activity in a home. The circuit court affirmed the district court's decision.

## II. ANALYSIS

On appeal, plaintiff and amici curiae argue that the lower courts erred in finding that there was a direct conflict between the MMMA and the city's ordinances. They argue that the city's ordinances, which did not fully ban medical marijuana use and only added certain safety restrictions, could coexist with the MMMA.

Preemption questions are reviewed de novo on appeal. *X v Peterson*, 240 Mich App 287, 289; 611 NW2d 566 (2000). Questions regarding the proper interpretation and application of a statute or ordinance are likewise reviewed de novo. *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012); *Township of Yankee Springs v Fox*, 264 Mich App 604, 605-606; 692 NW2d 728 (2004).

"The enactment and enforcement of ordinances related to municipal concerns is a valid exercise of municipal police powers as long as the ordinance does not conflict with the constitution or general laws." *Rental Prop Owners Ass'n of Kent Co v Grand Rapids*, 455 Mich 246, 253; 566 NW2d 514 (1997). Because a "municipality's power to adopt ordinances related to municipal concerns is subject to the constitution and law," "a municipal ordinance is preempted by state law if 1) the statute completely occupies the field that ordinance attempts to regulate, or 2) the ordinance directly conflicts with a state statute." *Id*. at 256-257 (quotation marks and citation omitted). In this case, the district court and circuit court concluded that there is a direct conflict between the city's ordinances and the MMMA. In that regard, the ordinary test to determine whether a conflict exists is straightforward. "[T]he test is whether the ordinance prohibits an act which the statute permits, or permits an act which the statute prohibits. Accordingly, it has often been held that a municipality cannot lawfully forbid what the legislature has expressly authorized, permitted, or required, or authorize what the legislature has expressly forbidden." *Id*. at 262 (quotation omitted).

In *Ter Beek v City of Wyoming*, 297 Mich App 446; 823 NW2d 864 (2012) (*Ter Beek I*), aff'd 495 Mich 1 (2014), this Court held that a local ordinance that prohibited the use of property in any manner contrary to federal law was preempted by the MMMA. The local ordinance effectively prohibited medical marijuana cultivation, distribution, and use, and provided that the local government could impose civil sanctions for violations of the ordinance. *Id*. at 453-454. In contrast, the MMMA explicitly permitted "use, possession, cultivation, delivery, and transfer[]" of medical marijuana. *Id*. at 454, citing MCL 333.26423(e). This Court explained that under MCL 333.26424(a), a qualifying patient (such as the plaintiff in *Ter Beek*) was granted immunity from " 'arrest, prosecution, or penalty in any manner, or [from being] denied any right or privilege.' " *Id*. at 454, quoting MCL 333.26424(a). Thus, the question was whether the possibility of being penalized for doing exactly what the MMMA permitted—and for which the MMMA prohibited imposing a penalty in any manner—resulted in a conflict between the local ordinance and the MMMA. *Id*. at 455. This Court explained that there "can be no doubt that enforcement of the ordinance could result in the imposition of sanctions that the MMMA does not permit." *Id*. at 455-456. Thus, there was a direct conflict between the statute and the ordinance, and the ordinance was preempted. *Id*. at 456-457.

Our Supreme Court considered the same ordinance after granting leave to appeal this Court's ruling in *Ter Beek I*. The Court likewise concluded that the MMMA preempted the local ordinance in *Ter Beek II*, 495 Mich at 19-24. The Court explained:

> Under the Michigan Constitution, the City's "power to adopt resolutions and ordinances relating to its municipal concerns" is "subject to the constitution and the law." Const 1963, art 7, § 22. As this Court has previously noted, "[w]hile prescribing broad powers, this provision specifically provides that ordinances are subject to the laws of this state, i.e., statutes." *AFSCME v Detroit*, 468 Mich 388, 410; 662 NW2d 695 (2003). The City, therefore, "is precluded from enacting an ordinance if . . . the ordinance is in direct conflict with the state statutory scheme, or . . . if the state statutory scheme preempts the ordinance by occupying the field of regulation which the municipality seeks to enter, to the exclusion of the ordinance, even where there is no direct conflict between the two schemes of regulation." *People v Llewellyn*, 401 Mich 314, 322; 257 NW2d 902 (1977)[, cert

-4-

den 435 US 1008; 98 S Ct 1879; 56 L Ed 2d 390 (1978), reh den 438 US 909; 98 S Ct 3131; 57 L Ed 2d 1152 (1978)] (footnotes omitted). A direct conflict exists when "the ordinance permits what the statute prohibits or the ordinance prohibits what the statute permits." *Id*. at 322 n 4. Here, the Ordinance directly conflicts with the MMMA by permitting what the MMMA expressly prohibits—the imposition of a "penalty in any manner" on a registered qualifying patient whose medical use of marijuana falls within the scope of § 4(a)'s immunity. [*Ter Beek II*, 495 Mich at 19-20.]

Our Supreme Court was careful, however, to explain that it was *not* holding that all local regulation of medical marijuana was prohibited. In a footnote, the Court wrote:

> Contrary to the City's concern, this outcome does not "create a situation in the State of Michigan where a person, caregiver or a group of caregivers would be able to operate with no local regulation of their cultivation and distribution of marijuana." Ter Beek does not argue, and we do not hold, that the MMMA forecloses all local regulation of marijuana; nor does this case require us to reach whether and to what extent the MMMA might occupy the field of medical marijuana regulation. [*Id*. at 24 n 9.]

In *Charter Twp of York v Miller*, 322 Mich App 648; 915 NW2d 373 (2018), app held in abeyance 921 NW2d 533 (2019), this Court addressed a local zoning ordinance that prohibited growing marijuana outdoors, along with other related issues. In that case, the defendants, brothers who resided together, were both qualified medical marijuana patients. *Id*. at 651. One brother constructed a detached structure in the backyard for the purpose of containing medical marijuana cultivated by his then-girlfriend, a registered caregiver. *Id*. The brothers failed to obtain construction permits for the building, did not obtain permits before installing electrical and water systems, and did not obtain an occupancy permit. *Id*. A local ordinance prohibited outdoor growing, and required that all necessary building, electrical, plumbing, and mechanical permits be obtained for those portions of a residential structure containing electrical wiring, lighting, or watering devices supporting the cultivation of marijuana. *Id*. at 651-652. After learning of the aforementioned structure, instead of attempting to enforce its zoning ordinances, the municipality filed a suit seeking a declaration regarding the validity of its ordinances. *Id*. at 652. The trial court held that because the MMMA allowed outdoor cultivation of marijuana, the municipality could not prohibit outdoor cultivation altogether. *Id*. at 653. However, the trial court "ruled that defendants' structure was subject to construction regulations and zoning so long as the zoning did not forbid outdoor cultivation of medical marijuana. The trial court ordered defendants to seek the required permits and ordered plaintiff to review and grant the permits if defendants' structure complied with the building code." *Id*.

In this Court, "[t]he dispositive issues . . . [were] whether the MMMA permits outdoor medical marijuana growing and, if so, whether the MMMA preempts plaintiff's zoning regulation prohibiting outdoor growing in residential areas." *Id*. at 654-655. This Court first explained that pursuant to MCL 333.26423(d), the MMMA permits medical marijuana growing in an " 'enclosed, locked facility,' including outdoor growing if done as specified." *Id*. at 657. This was because the definition of an "enclosed, locked facility" had been amended in 2012 to provide requirements for growing marijuana outdoors. *Id*., citing 2012 PA 512. Thus, the

MMMA clearly contemplated that registered caregivers and patients could grow marijuana outdoors. *Id*. at 657-658. Because the local ordinance prohibited precisely what the MMMA allowed, there was a direct conflict, and the local ordinance was preempted. *Id*. at 658. But this Court went on to address concerns that its holding would mean that registered caregivers would be immunized from local construction regulations entirely. *Id*. at 659. As we stated:

> The record in this case reflects that the trial court essentially read the plain language of the MMMA and held that the MMMA permitted growing medical marijuana outdoors. The trial court recognized that the Legislature amended MCL 333.26423(d) to redefine the meaning of "enclosed, locked facility" to include specific requirements for structures enclosing medical marijuana being grown outdoors. The trial court did not clearly err by finding that the Legislature amended the MMMA to permit outdoor cultivation. The trial court reasonably inferred that the Legislature changed the MMMA to permit and regulate outdoor-growing facilities. Therefore, the MMMA authorizes growing medical marijuana outdoors under specific requirements.

> The trial court read the plain language of MCL 333.26423(d) and simply concluded that the MMMA permitted what plaintiff's home-occupation zoning ordinance expressly prohibited. The trial court did not find ambiguity and did not judicially construe MCL 333.26423(d) in search of its meaning. We also do not find any inherent ambiguity necessitating judicial construction. Therefore, the trial court did not err by applying the plain language of the MMMA to resolve the case.

> *The trial court also correctly held that defendants' enclosed, locked facility must comply with MCL 333.26423(d), plaintiff's construction regulations, and plaintiff's construction-permit requirements.* Contrary to plaintiff's contention, the trial court's ruling did not grant defendants immunity and exemption from all zoning and construction regulations. We believe that the trial court narrowly tailored its ruling to resolve the issues presented in this case *and yet upheld plaintiff's power to regulate the public health and safety* respecting new construction. Accordingly, the trial court did not err. [*Id*. at 660-661 (emphasis added).]

However, after we granted leave to appeal in this case, our Court decided *DeRuiter v Byron Twp*, 325 Mich App 275; ___ NW2d ___ (2018), oral argument on lv app 921 NW2d 537 (2019). At issue in *DeRuiter*, was whether a local zoning ordinance that "prohibited caregivers from the medical use of marijuana in a commercial property" directly conflicted with the MMMA. *DeRuiter*, 325 Mich App at 278. This Court held:

> The MMMA provides immunity from arrest, prosecution, and penalty in any manner and prohibits the denial of any right or privilege to qualifying medical marijuana patients and registered primary caregivers. See MCL 333.26424(a) and (b); *People v Hartwick*, 498 Mich 192, 210-221; 870 NW2d 37 (2015). MCL 333.26424(b)(1) and (2) grant caregivers the right to possess 2.5 ounces of usable marijuana for each qualifying patient and cultivate and keep 12 marijuana plants

for each qualifying patient in an enclosed, locked facility. In relevant part, MCL 333.26423(d) defines an "enclosed, locked facility" as "a closet, room, or other comparable, stationary, and fully enclosed area equipped with secured locks or other functioning security devices that permit access only by a registered primary caregiver or registered qualifying patient."

\* \* \*

MCL 333.26423(d) essentially provides that caregivers may operate medical marijuana activities so long as they comply with the enclosed, locked facility requirements. MCL 333.26424(b)(1) and (2) and MCL 333.26423(d), when read together, grant registered caregivers the rights and privileges to grow marijuana without fear of penalties imposed by local governments. . . .

\* \* \*

We believe that the plain language of the MMMA lacks any ambiguity that would necessitate judicial construction to decipher its meaning. When the statute is read as a whole, no irreconcilable conflict results that makes the statutory provisions susceptible to more than one meaning. We conclude that the MMMA permits medical use of marijuana, particularly the cultivation of marijuana by registered caregivers, at locations regardless of land-use zoning designations as long as the activity occurs within the statutorily specified enclosed, locked facility. No provision in the MMMA authorizes municipalities to restrict the location of MMMA-compliant medical use of marijuana by caregivers. Nor does the MMMA authorize municipalities to adopt ordinances restricting MMMA-compliant conduct to home occupations in residential locations. So long as caregivers conduct their medical marijuana activities in compliance with the MMMA—including that caregivers cultivate medical marijuana in an "enclosed, locked facility" as defined by MCL 333.26423(d) and do not violate the prohibitions of MCL 333.26427(b)—such conduct cannot be restricted or penalized. [*DeRuiter*, 325 Mich App at 281-285.]

Applying its analysis to the facts before it, this Court agreed that the zoning ordinance could not be enforced:

We believe that the trial court correctly read the MMMA as a whole, analyzed its plain language, and interpreted the MMMA in a reasonable and harmonious manner. The trial court correctly ruled that defendant's home-occupation ordinance prohibited what the MMMA permitted, MMMA-compliant conduct, merely because it occurred in a commercially zoned location. The trial court also correctly decided that defendant's zoning ordinance permitted what the MMMA prohibited by targeting and restricting MMMA-compliant use by adding a layer of restrictions and regulations that interfered with lawful use by imposing a permit requirement that defendant could revoke without regard to plaintiff's MMMA-compliant conduct. Further, the trial court also correctly ruled that defendant's zoning ordinance also permitted what the MMMA prohibited by

-7-

allowing defendant to impose penalties regardless of plaintiff's MMMA-compliant conduct. Accordingly, the trial court did not err by ruling that a direct conflict existed between defendant's ordinance and the MMMA resulting in the MMMA's preemption of plaintiff's home-occupation ordinance. [*Id*. at 287.]

Thus, the MMMA prohibits local governments from restricting MMMA-compliant behavior. As this Court stated in *DeRuiter*, "So long as caregivers conduct their medical marijuana activities in compliance with the MMMA—including that caregivers cultivate medical marijuana in an "enclosed, locked facility" as defined by MCL 333.26423(d) and do not violate the prohibitions of MCL 333.26427(b)—such conduct cannot be restricted or penalized." *Id*. at 285. Applying that rule to this case, the city's ordinances cannot stand. The ordinances add "a layer of restrictions and regulations" that restricts defendant's cultivation of medical marijuana. The lower courts did not err in concluding that the ordinances in this case directly conflict with the MMMA and, as such, may not be enforced.

Affirmed.

/s/ James Robert Redford
/s/ Jane E. Markey
/s/ Kirsten Frank Kelly