*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ZACHARY ALAN VARELA,

      Plaintiff-Appellant,

v

BRAD SPANSKI and CATHERINE SPANSKI,

      Defendant-Appellees.

FOR PUBLICATION
July 11, 2019
9:00 a.m.

No. 343137
Wayne Circuit Court
LC No. 17-006650-CK

Before: TUKEL, P.J., and JANSEN, and RIORDAN, JJ.

JANSEN, J.

In this civil action involving a contract for the cultivation and distribution of medical marijuana, plaintiff appeals as of right the order granting summary disposition under MCR 2.116(C)(8) in favor of defendants. We affirm.

## I. FACTUAL BACKGROUND

Plaintiff is registered as a qualifying patient and primary caregiver under the Michigan Medical Marihuana Act (the MMMA), MCL 333.26421 *et seq*. In April 2016, defendants offered to purchase a two-story industrial warehouse building in the city of Detroit and lease it to plaintiff and his business partner, Derek Powers, "for the purpose of cultivating marihuana." Defendants also offered to enter into a partnership agreement where defendants would finance the start-up costs and operating expenses of a marijuana growing operation in exchange for a return on the investment over a five-year period. In exchange, plaintiff would be in charge of growing and harvesting the marijuana. In September 2016, the parties entered into two agreements: a five-year lease agreement for the warehouse and a five-year partnership agreement. The whole of the partnership agreement provided:

1. Anticipated grow start date: July 15, 2016.

2. Revenue generated from harvests will be initially split as: Investors will calculate their total investment as of the first harvest less the cost of the building ($150,000) and divide this amount by 12 in order to generate a 1 year payback (i.e. $200,000 / 12 = $16,700 per month) – this amount will be fixed and

-1-

subtracted from the total revenue generated from the harvests for this 1 year period, much like the operating expense. Once investors are fully compensated for their initial investment total (see investor expense spreadsheet) then revenue split reverts to 40% Investors and 60% growers. Investor payback shall commence January 2017.

3. Zach Varela and/or Zach's LLC will sign a building occupancy lease to be effective September 1, 2016 and run for 5 years with month to month renewal thereafter.

4. The express purpose of lease is to allow Investors to create a legal device to convert cash revenue from the grow operation into a financial Institution deposit.

5. After each harvest has been monetized, all operating expenses (i.e. utilities, nutrients, soil, etc.) for the next grow cycle will be set aside prior to distribution of profits to Investors and Growers in an escrow account or other mutually agreed account for the purpose of producing the next harvest. Investors will provide documentation of this operating expense (i.e. utilities, etc.).

6. Investors will pay all applicable taxes and building insurance through the term of the lease.

7. Should the cultivation operation be temporarily or permanently halted for any reason (I.e. Government Intervention, Act of God, etc.) prior to Investors being fully compensated for their initial investment, Investors will retain ownership of the building and cultivation equipment. Otherwise, Investors will transfer ownership of all grow equipment once reimbursement takes place.

8. It is estimated that each plant given a 15 week growing period will produce 2.2 lbs. per plant and have a market value of $2500 per pound based on initial economics provided to Investors.

9. The maximum number of plants will be strictly enforced based on the Medical Marihuana Act of Michigan (2008) or until such time the partners receive a state license to produce additional plants upon new legislation.

10. Grower's responsibilities: Zach will manage plants on a d-t-d along with necessary equipment maintenance. Derek will manage the sales and transfer of product to buyer(s) – Derek will also compensate Investors Immediately after the sale of product or in another mutually agreeable method and timeframe.

Last, this document is personal and confidential and is a document to expressly state ownership and compensation of the partnership and in no way shall be shared with anyone outside of the partnership as stated as "Investors" and "Growers" above.

The partnership agreement was signed and dated by plaintiff, his business partner, and defendants.

Initially, the parties' execution of their contractual obligations went smoothly: defendants purchased the subject property and cultivation equipment and hired contractors to build out the warehouse in a manner intended for marijuana cultivation; plaintiff oversaw the build out and set up a specialized marijuana cultivation system. However, despite plaintiff's request to do so, defendants failed to install a security system, and in December 2016, a street gang allegedly robbed the building of plaintiff's first harvest.

After the robbery, plaintiff continued to cultivate 70 marijuana plants, for which he had valid MMMA registration cards. However, defendants began showing the property and in March 2017, informed plaintiff that "new investors" were taking over the property. In April 2017, defendants ordered plaintiff to turn over his keys to the building and informed him that he no longer had authority to use or access the building. Plaintiff was not permitted to retrieve his marijuana plants or his personal belongings.

After failed attempts to resolve the dispute and retrieve his possessions, plaintiff filed an eight-count complaint alleging breach of the lease agreement, breach of the partnership agreement, tortious interference with contracts, conversion, misappropriation of trade secrets, unjust enrichment, and breach of implied covenant of good faith and fair dealing. Plaintiff also sought injunctive relief. However, plaintiff failed to attach the lease agreement and the partnership agreement to his complaint, claiming that defendants had destroyed evidence of the agreements in order to thwart all legal obligations to plaintiff.

Defendants sought summary disposition of all of plaintiff's claims under MCR 2.116(C)(8), arguing that all of plaintiff's claims were barred by the wrongful conduct rule. Defendants argued that plaintiff would have to rely on his illegal conduct to support all of his claims, the wrongful conduct rule prohibited the trial court from granting him any relief. Moreover, defendants argued, plaintiff had failed to plead any exception to the wrongful conduct rule, and therefore his complaint must be dismissed in its entirety.

The trial court agreed. Specifically, the trial court concluded that "the party's contracts would be enforceable if they called for the production of marijuana consistent with the terms of the MMMA." However, the MMMA "does not grant caregivers and patients a license to possess, to manufacture or to distribute marijuana," and that the MMMA only grants an affirmative defense for criminal chargers. Moreover, plaintiff was the only party to the contract with caregiver status under the MMMA, and that under the statute, he was precluded from growing marijuana for more than five patients. Observing that the party's agreement required plaintiff to pay over $16,000.00 in rent each month, the trial court deduced that plaintiff would have to produce over one pound of marijuana each month for each patient, which would not be consistent with conduct permitted by the MMMA. Finally, the allegations in plaintiff's complaint were conclusory and plaintiff had failed to "establish even a question of fact as to whether the conduct called for in the party's agreement would be legal or otherwise consistent with Michigan Public Policy." Accordingly, the trial court granted summary disposition in favor of defendants. This appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition under MCR 2.116(C)(8) de novo. *Bedford v White*, 318 Mich App 60, 64; 896 NW2d 69 (2016).

> A motion under MCR 2.116(C)(8) tests whether the opposing party has failed to state a claim on which relief can be granted. When deciding a motion under (C)(8), this Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party. A trial court may grant summary disposition under MCR 2.116(C)(8) only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. [*Mendelson Orthopedics PC v Everest Nat'l Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 341013); slip op at 4 (citations and quotation marks omitted).]

## III. PROPER STANDARD OF REVIEW

Plaintiff first argues on appeal that the trial court erred in using the standard of review applicable to summary disposition motions brought under MCR 2.116(C)(10) when deciding defendants' summary disposition motion brought under MCR 2.116(C)(8). We disagree.

Plaintiff correctly notes that in deciding defendants' motion for summary disposition, the trial court used language implicating the standard of review applicable to MCR 2.116(C)(10) motions, repeatedly noting that no material questions of fact existed on the record.[1] However, notwithstanding this slip of language, the trial court does not appear to have considered evidence outside the pleadings, and therefore the error is harmless.

The trial court's reference to the partnership agreement, which is part of the pleadings for purposes of plaintiff's claims, draws reasonable inferences from that document. Although plaintiff suggests that the partnership agreement is not part of the pleadings because it was not attached to the complaint, MCR 2.113(C)(1)(b) and (2) excuse such failure, and makes the contract part of the pleadings when the subject contracts are in the possession of the other party and the pleading so states. Here, plaintiff's complaint stated that *both* the lease agreement and the partnership agreement concern the lease of the property, and that defendants had "destroyed evidence of the lease agreement in an effort to thwart all legal obligations they have to plaintiff." A reasonable inference arises from these allegations that plaintiff did not attach either the lease agreement or the partnership agreement because they were in defendants' possession. In fact, defendants did have the agreements in their possession, and attached the partnership agreement

---

[1] "A motion brought pursuant to MCR 2.116(C)(10) tests the factual support of a plaintiff's claim and is reviewed 'by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law.' " *Mendelson Orthopedics PC*, ___ Mich App at __; slip op at 3, quoting *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

to their reply brief in support of their motion for summary disposition. Therefore, the partnership agreement was part of the pleadings, and although the trial court articulated the wrong standard, it did not actually consider evidence outside of the pleadings in deciding defendants' motion for summary disposition.

## IV. § 4 OR § 8 OF THE MMMA

Second, plaintiff argues that the trial court erroneously interpreted the MMMA when granting summary disposition in favor of defendants. Specifically, plaintiff argues that the trial court focused on § 8 of the MMMA, MCL 333.26428, rather than § 4 of the MMMA, MCL 333.26424. We agree. However because we conclude *infra* that plaintiff has not plead facts showing that he is entitled to the protections found in § 4, reversal is not required.

Resolution of this dispute once again puts before this Court questions regarding the interpretation and application of § 4 and § 8 of the MMMA. While this Court and the Michigan Supreme Court have opined on this topic in numerous opinions, neither has expressly addressed the procedural aspects of these sections in the context of the summary disposition phase of a civil lawsuit between private parties.[2] We take the opportunity to do so now.

Because the MMMA was passed by ballot initiative, this Court "must therefore determine the intent of the electorate in approving the MMMA, rather than the intent of the Legislature." *People v Hartwick*, 498 Mich 192, 209-210; 870 NW2d 37 (2015). The most reliable evidence of the electorate's intent is the plain language of the statute, which this Court must interpret consistent with its ordinary meaning. See *id*. at 210. "If the statutory language is unambiguous, . . . no further judicial construction is required or permitted because [the Court] must conclude that the electors intended the meaning clearly expressed." *People v Bylsma*, 493 Mich 17, 26; 825 NW2d 543 (2012) (citation, alterations, footnotes, and quotation marks omitted).

Our Supreme Court first interpreted the MMMA in *People v Kolanek*, 491 Mich 382, 394; 817 NW2d 528 (2012), and explained:

> The MMMA does not create a general right for individuals to use and possess marijuana in Michigan. Possession, manufacture, and delivery of marijuana remain punishable offenses under Michigan law. Rather, the MMMA's protections are limited to individuals suffering from serious or debilitating

---

[2] In *Ter Beek v City of Wyoming*, 495 Mich 1; 846 NW2d 531 (2014), our Supreme Court considered whether the MMMA preempts a city ordinance creating civil penalties for medical use of marijuana, which the trial court below had decided on a MCR 2.116(C)(10) motion. Our Supreme Court, however, made no express comment on the application of (C)(10) standards to an assertion of § 4 immunity. This Court, in the context of an MCR 2.116(C)(8) motion, most recently considered whether the rescission of a governmental agency's conditional offer of employment allegedly for medical marijuana use was a "civil penalty." *Eplee v Lansing*, __ Mich App __ ; __ NW2d __ (2019), slip op at 4. The *Eplee* Court likewise made no comment regarding the application of MCR 2.116(C)(8) standards to an assertion of § 4 immunity.

medical conditions or symptoms, to the extent that the individuals' marijuana use "is carried out in accordance with the provisions of the MMMA." [*Kolanek*, 491 Mich at 394, citing MCL 333.26427(a) (alterations and footnote omitted).]

As a whole, "the MMMA defines the parameters of legal medical-marijuana use, promulgates a scheme for regulating registered patient use and administering the act, and provides for an affirmative defense, as well as penalties for violating the MMMA." *Kolanek*, 491 Mich at 394.

The primary mechanism by which the MMMA permits marijuana use is through its immunity provision, found in § 4. Section 4 grants broad immunity from criminal prosecution and civil penalties to "qualifying patients" and "primary caregivers" if certain conditions are met. As our Supreme Court has explained, the immunity found in § 4 is "a unique creature in the law" and "excuses an alleged offender for engaging in otherwise illegal conduct . . . ." *Hartwick*, 498 Mich at 212. In other words, § 4 functions to provide an exception to otherwise illegal conduct; it does not create affirmative rights and it does not grant registered patients carte blanche in their use of marijuana. *Eplee v Lansing*, __ Mich App __; __ NW2d __ (2019), slip op at 7; *People v Koon*, 494 Mich 1, 6; 832 NW2d 724 (2013). Both this Court and the Michigan Supreme Court have recognized that when a party's conduct is in accordance with § 4, but another law would otherwise subject the party to "arrest, prosecution, or penalty in any manner or [deny him] of any right or privilege[,]" the MMMA operates to insulate that individual from such penalties and supersedes the competing law. See *Koon*, 494 Mich at 8-9 (holding that "the MMMA is inconsistent with, and therefore supersedes, [the Motor Vehicle Code's zero tolerance provision,] MCL 257.625(8)[,] unless a registered qualifying patient loses immunity because of his or her failure to act in accordance with the MMMA"); *Ter Beek v City of Wyoming*, 495 Mich 1, 20; 846 NW2d 531 (2014) (noting that "individuals who satisfy the statutorily specified criteria [of § 4]" shall not be subject to . . . penalty in any manner," and holding that the MMMA preempts a city ordinance creating civil penalties for medical use of marijuana); *Braska v Challenge Mfg Co*, 307 Mich App 340, 355; 861 NW2d 289 (2014) (recognizing that "to the extent another law would penalize an individual for using medical marijuana in accordance with the MMMA, that law is superseded by the MMMA," and concluding that denial of unemployment benefits for testing positive for marijuana under a drug test per the Michigan Employment Security Act is suspended if the individual is in compliance with the MMMA).

In this case, plaintiff argues that the trial court erred by granting summary disposition under MCR 2.116(C)(8) in favor of defendants because it predicated its ruling on an erroneous interpretation of the MMMA: that plaintiff must establish the elements of the MMMA's affirmative defense, § 8, MCL 333.26428, to avoid application of the wrongful conduct rule. Section 8 provides a statutory affirmative defense to charges involving marijuana for its medical use in the event the individual facing criminal charges fails to establish the broader immunity under § 4. *Kolanek*, 491 Mich at 396. Because the MMMA is designed to benefit those who properly register and adhere to its requirements, the elements for establishing a § 8 defense are more onerous than those of § 4. *Hartwick*, 498 Mich at 228.

We agree with plaintiff that the trial court in this case erred by relying on § 8 in granting defendants' motion for summary disposition. Here, the trial court recognized that the partnership agreement would not be subject to the wrongful conduct rule if the contract complied with the MMMA. The trial court then concluded that summary disposition was proper because plaintiff

had to establish each element of the affirmative defense and had failed to do so. The affirmative defense found in § 8, however, is only applicable to criminal prosecutions. As our Supreme Court has explained, "by its own terms, § 8(a) only applies as a defense to any prosecution involving marihuana . . . . The text and structure of § 8 establish that the drafters and voters intended that "prosecution" refer only to a criminal proceeding." *State v McQueen*, 493 Mich 135, 159; 828 NW2d 644 (2013) (citation and quotations omitted). The present matter is not a criminal prosecution, but a civil lawsuit for damages stemming from the termination of the parties' contractual relationship. The trial court's focus, then, on the § 8 affirmative defense was legal error.

However, our analysis does not end there. Plaintiff asserted immunity under § 4 and, indeed, consistent with the language of the MMMA, Michigan courts have recognized that this immunity may insulate a plaintiff from civil penalties if that plaintiff is in compliance with the MMMA. See *Ter Beek*, 495 Mich at 20; *Braska*, 307 Mich App at 355; cf. *Koon*, 494 Mich at 8-9. Consequently, this Court must consider application of § 4 to the facts of this case. While the MMMA does not expressly provide for the type of financing arrangement between the parties in the instant case, plaintiff claims that his conduct falls within the immunity provision contained in § 4 of the MMMA and, therefore, application of the wrongful conduct rule is a denial of a right and cannot be applied to bar his claims. Quoting our Supreme Court's most recent MMMA decision considering the application of § 4, *Hartwick*, plaintiff explains that his "well-pleaded factual allegations" satisfy the requirement that he prove by a "preponderance of the evidence" the elements necessary to establish immunity. *Hartwick* set out in exacting detail the procedural and substantive requirements of § 4, in relevant part, as follows:

(1) entitlement to § 4 immunity is a question of law to be decided by the trial court before trial;

(2) the trial court must resolve factual disputes relating to § 4 immunity, and such factual findings are reviewed on appeal for clear error;

(3) the trial court's legal determinations under the MMMA are reviewed de novo on appeal;

(4) a defendant may claim immunity under § 4 for each charged offense if the defendant shows by a preponderance of the evidence that, at the time of the charged offense, the defendant

(i) possessed a valid registry identification card,

(ii) complied with the requisite volume limitations of § 4(a) and § 4(b),

(iii) stored any marijuana plants in an enclosed, locked facility, and

(iv) was engaged in the medical use of marijuana[.] [*Hartwick*, 498 Mich at 201.]

*Hartwick* was decided in the criminal context, however we conclude that its pronouncements as to the procedural application of § 4 can be extended to civil cases at the summary disposition stage. Accordingly, we conclude that a trial court may dismiss a case on a

summary disposition motion if a party fails to allege facts that qualify it for immunity under § 4 of the MMMA. Stated differently, a plaintiff must plead facts showing that they were compliant with the MMMA to avoid summary disposition under MCR 2.116(C)(8).

Returning to the substantive requirements, § 4 of the MMMA grants broad immunity from civil penalties, or the denial of a right or privilege, to "qualifying patients" and "primary caregivers" if the individual complies with the MMMA. Determining the effect of this provision in the instant case contemplates a two-step analysis. See *Braska*, 307 Mich App at 356; *Eplee*, ___ Mich App at ___, slip op at 9. The first question this Court must answer is whether the plaintiff has pleaded facts showing that he complied with the requirements of § 4. If the plaintiff has successfully pleaded facts showing he complied with the requirements of § 4, then this Court must next consider whether the plaintiff is subject to a "penalty in any manner, or [the denial of] any right or privilege" because of the medical use of marijuana. This latter inquiry in this case requires this Court to determine whether application of the common-law wrongful conduct rule constitutes a civil penalty or denial of a right or privilege, such that the MMMA would suspend its application.

Under this framework, the first query mandates consideration of the elements necessary to establish immunity under the MMMA. Sections 4(a) and 4(b) of the MMMA contain parallel immunity provisions that apply to qualifying patients and registered caregivers respectively. Section 4(a) provides:

> (a) A qualifying patient who has been issued and possesses a registry identification card is not subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including, but not limited to, civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for the medical use of marihuana in accordance with this act, provided that the qualifying patient possesses an amount of marihuana that does not exceed a combined total of 2.5 ounces of usable marihuana and usable marihuana equivalents, and, if the qualifying patient has not specified that a primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility. Any incidental amount of seeds, stalks, and unusable roots shall also be allowed under state law and shall not be included in this amount.

Similarly, § 4(b) provides:

> (b) A primary caregiver who has been issued and possesses a registry identification card is not subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for assisting a qualifying patient to whom he or she is connected through the department's registration process with the medical use of marihuana in accordance with this act. . . . . This subsection applies only if the primary caregiver possesses marihuana in forms and amounts that do not exceed any of the following:

(1) For each qualifying patient to whom he or she is connected through the department's registration process, a combined total of 2.5 ounces of usable marihuana and usable marihuana equivalents.

(2) For each registered qualifying patient who has specified that the primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility.

(3) Any incidental amount of seeds, stalks, and unusable roots.

Our Supreme Court examined the substantive requirements of these provisions in the criminal context in *Hartwick* and articulated what elements a party claiming immunity must establish. We conclude that while the procedural hurdles are different in the civil forum, the substantive requirements are the same. Namely, a plaintiff seeking immunity in a civil suit must plead facts showing immunity, as follows:

> A qualifying patient must [allege facts showing] that, at the time [that the claim accrued,] he or she (1) possessed a valid registry identification card; (2) possessed no more marijuana than allowed under § 4(a); (3) stored any marijuana plants in an enclosed, locked facility; and (4) was engaged in the medical use of marijuana. If the qualifying patient [alleges sufficient facts of] the first and second elements, then a presumption exists that the qualifying patient was engaged in the medical use of marijuana, thereby establishing the fourth element.
>
> Similarly, a primary caregiver must [allege facts showing] that, at the time [that the claim accrued], he or she (1) possessed a valid registry identification card; (2) possessed no more marijuana than allowed under § 4(b); (3) stored any marijuana plants in an enclosed, locked facility; and (4) was assisting connected qualifying patients with the medical use of marijuana. If the primary caregiver [alleges sufficient facts of] the first and second elements, then a presumption exists that the primary caregiver was engaged in the medical use of marijuana, thereby establishing the fourth element. [*Hartwick*, 498 Mich at 221 (alterations made to be consistent with civil procedure).]

Turning now to the instant case, plaintiff claims that he pleaded facts supporting the proposition that he met the substantive requirements of § 4 immunity. In particular, plaintiff quotes the following portions of his complaint in support:

> 10. On or about April 2016, Defendants offered to purchase real property located at 17507 Van Dyke Street, Detroit, Michigan 48236 (i.e., *2-story industrial warehouse building*) and lease such real property to Plaintiff and his business partner, Derek Powers, for the purpose of cultivating medical marihuana pursuant to the MMMA.

\* \* \*

17. Plaintiff subsequently cultivated medical marihuana plants as authorized by the MMMA inside of the locked, enclosed structure of the subject property.

* * *

53. Plaintiff at all relevant times lawfully owned and possessed medical marihuana plants pursuant to the MMMA, along with other personal property and equipment at the subject property.

According to plaintiff, had the court applied the correct standard applicable to (C)(8) motions, it would have accepted these allegations as true and denied defendants' motion. It is plaintiff, however, who misunderstands his burden. A close reading of the above statements, and the complaint as a whole, shows that plaintiff does not make allegations of fact, but rather makes conclusory statements as well as conclusions of law that he acted in a MMMA-compliant manner. Plaintiff does not support these conclusory statements with any facts. A mere statement of a pleader's conclusions and statements of law, unsupported by allegations of fact, will not suffice to state a cause of action. *ETT Ambulance Serv Corp v Rockford Ambulance, Inc*, 204 Mich App 392, 395; 516 NW2d 498 (1994); *Lansing Sch Ed Ass'n v Lansing Bd of Ed (On Remand)*, 293 Mich App 506, 519; 810 NW2d 95 (2011).

Indeed, a comprehensive review of plaintiff's complaint otherwise fails to show any factual allegations supporting the claim that plaintiff met the limitation requirements or that the marijuana was for medical use, as required under § 4. In his complaint, plaintiff alleged that he is a registered patient, a qualified caregiver to five patients, and that he possessed 70 plants when defendants terminated the agreement. The partnership agreement, which is part of the pleadings for purposes of plaintiff's contract action and the motion under MCR 2.116(C)(8), indicated that plaintiff would pay defendants $16,700 per month, which would be subtracted from the grow operations' monthly revenue. The partnership agreement further specified that plaintiff was expected to produce 2.2 pounds of usable marijuana per plant every 15 weeks, which is approximately one-half pound per month per plant, or approximately 35 pounds per month for 70 plants. As a qualifying patient and caregiver to five qualifying patients, plaintiff could possess no more than 15 ounces of usable marijuana and 72 plants at any given time. See *Hartwick*, 498 Mich at 218-219, n 54. Given the projected output of the grow operation, as well as the monthly rental payment, which was to be subtracted from the operation's revenue, no reasonable inference could be drawn from the pleadings that plaintiff met the volume limitations of § 4(a) and § 4(b), or that the production of marijuana under the partnership agreement was for purely medical use. Accordingly, based on plaintiff's own "well pleaded allegations," plaintiff would be unable to qualify for immunity under the MMMA. Additionally, the partnership agreement indicates that plaintiff intended to transfer the marijuana to his business partner, Powers, for Powers to manage the sale and distribution of the product. Such a transfer to a third person, who is not a registered patient or a patient's primary caregiver, to facilitate sale and delivery is plainly not a permissible medical use. See *McQueen*, 493 Mich at 156 ("[Section] 4 immunity does not extend to a registered primary caregiver who transfers marijuana for any purpose other than to alleviate the condition or symptoms of a specific patient with whom the caregiver is connected through the MDCH's registration process.").

In sum, accepting the factual allegations of plaintiff's complaint as true, including all reasonable inferences that can be drawn from them, and in a light most favorable to plaintiff, plaintiff has failed to plead facts to show that his acts were in compliance with the § 4 immunity requirements of the MMMA. It follows, even assuming without deciding that plaintiff has been denied a right, that plaintiff is not entitled to this immunity because his conduct was not MMMA-compliant.

Because the trial court reached the correct result, i.e., granting summary disposition in favor of defendants, albeit for the wrong reasons, we find that reversal is unwarranted and therefore affirm. *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) (an appellate court may affirm the lower court if that court reached the right result for the wrong reason).

## V. WRONGFUL CONDUCT RULE

Third, plaintiff argues that the wrongful conduct rule is inapplicable here, and the trial court erroneously relied on it in granting summary disposition in favor of defendants. We disagree.

The wrongful conduct rule is well established in Michigan common-law. *Orzel v Scott Drug Co*, 449 Mich 550, 558-559; 537 NW2d 208 (1995). This rule, which bars a claim if a plaintiff must rely on his own illegal conduct for recovery, stems from the sound public policy that "courts should not lend their aid to a plaintiff who founded his cause of action on his own illegal conduct." *Id*. at 559. This rule will bar recovery where (1) "the plaintiff's conduct [is] prohibited or almost entirely prohibited under a penal or criminal statute[;]" (2) "a sufficient causal nexus . . . exist[s] between the plaintiff's illegal conduct and the plaintiff's asserted damages[;]" and (3), the defendant's culpability is not greater than the plaintiff's culpability. *Id*. at 561, 564, 569.

Here, accepting the factual allegations of the complaint as true, and viewing them in a light most favorable to plaintiff, we conclude that plaintiff has failed to state a claim because the wrongful conduct rule applies to bar recovery. First, plaintiff's conduct—manufacturing, possessing, and delivering marijuana—is prohibited under the Public Health Code, MCL 333.7401(d). These are serious illegal acts that are punishable as felonies. And, contrary to plaintiff's argument on appeal, plaintiff has failed to plead facts showing that his conduct was lawfully protected medical marijuana activity that warrants immunity under the MMMA. Therefore, the MMMA will not supersede the wrongful conduct rule where plaintiff has not acted consistently with the MMMA. Plaintiff's claim that his conduct was lawful lacks merit.

Next, a causal nexus exists between plaintiff's illegal conduct and all of plaintiff's claims, which at their core relate to the losses plaintiff suffered when defendants ended the illegal contractual relationship. Indeed, plaintiff's losses are a proximate result of entering into the illegal agreement to cultivate, possess, sell, and deliver marijuana. Absent the existence of this illegal arrangement and breach of it, plaintiff would have no injury whatsoever. Under these circumstances, where the illegal act is both the source of the civil right and plaintiff's criminal responsibility, a casual nexus is not lacking. Plaintiff, in asserting that a causal connection is

absent, simply ignores that his recovery is dependent upon enforcement of illegal agreements he executed.

Finally, viewing the pleadings most favorably to plaintiff, the factual allegations do not indicate that defendants were more culpable than plaintiff. Both parties voluntarily entered into the illegal agreement. Defendants' role was to finance the operation, while plaintiff was to oversee the day-to-day operation and cultivate the marijuana. At most, the facts alleged show that the parties were equally culpable. When both parties are equally at fault, the wrongful conduct rule still applies.

Relatedly, plaintiff argues that the circuit court erred by applying the wrongful conduct rule because defendants themselves had unclean hands. It is well settled that "one who seeks equitable relief must do so with clean hands." *Attorney General v PowerPick Players' Club of Mich, LLC*, 287 Mich App 13, 52; 783 NW2d 515 (2010). The unclean hands doctrine is "a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the [opposing party,]" and is only relevant to equitable actions or defenses. *Rose v Nat'l Auction Group*, 466 Mich 453, 463, 468; 646 NW2d 455 (2002).

However, the wrongful conduct rule is not an equitable defense. Indeed, plaintiff cites no law supporting the proposition that the wrongful conduct rule is a form of equitable relief. Instead, the rule is a common-law maxim that operates to deny relief where the claim is based on the plaintiff's illegal conduct, a causal connection exists between that conduct and the damages sought, and the defendant is not more culpable than the plaintiff. " [T]he law will not lend itself to afford relief to one as against the other, [in situations like the present where the plaintiff and the defendant are equally in the wrong,] but will leave them as it finds them." *Orzel*, 449 Mich at 558. Consequently, the unclean hands doctrine is inapplicable to this matter. Moreover, even if the doctrine did apply, it would not function to estop defendants from asserting the wrongful conduct rule because he who seeks equity must do so with clean hands and plaintiff's conduct was likewise illegal.

## VI. PLAINTIFF'S NONCONTRACTUAL CLAIMS

Finally, plaintiff argues that the trial court erroneously dismissed his noncontractual claims without providing any reasoning. We disagree.

Plaintiff correctly points out that the circuit court did not expressly apply the wrongful conduct rule to all of plaintiff's claims when it granted summary disposition to defendants. Instead, the court only referenced the parties' agreements in relation to the rule and provided no analysis as to plaintiff's remaining claims of tortious interference with contracts, conversion, misappropriation of trade secrets, unjust enrichment, and breach of implied covenant of good faith and fair dealing, or as to plaintiff's request for injunctive relief. On appeal, plaintiff suggests that these other claims were not subject to the wrongful conduct rule because a party may raise alternative and even inconsistent claims, which plaintiff asserts he has raised here. Even a cursory review of those claims, however, shows that they relate to the same illegal conduct on which plaintiff's contract actions were based. Plaintiff does not cite any law supporting the proposition that these other claims, based on the same illegal conduct, are not

subject to the wrongful conduct rule. Application of the wrongful conduct rule to all of plaintiff's claims was proper.

Affirmed.

/s/ Kathleen Jansen
/s/ Jonathan Tukel
/s/ Michael J. Riordan