*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHARTER TOWNSHIP OF YPSILANTI,

   Plaintiff-Appellant,

v

JUDITH PONTIUS,

   Defendant-Appellee.

UNPUBLISHED
December 29, 2020

No. 340487
Washtenaw Circuit Court
LC No. 16-000800-CZ

ON REMAND

Before: CAVANAGH, P.J., and MARKEY and LETICA, JJ.

PER CURIAM.

In an unpublished opinion, we affirmed the trial court's September 2017 order determining that plaintiff's, the Charter Township of Ypsilanti, zoning ordinance directly conflicted with the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.*, and thus was preempted by the MMMA. *Ypsilanti Charter Twp v Pontius*, unpublished per curiam opinion of the Court of Appeals, issued October 30, 2018 (Docket No. 340487). In so holding, we concluded that we were bound by this Court's earlier published decision in *DeRuiter v Byron Twp*, 325 Mich App 275; 926 NW2d 268 (2018). *Ypsilanti Charter Twp*, unpub op at 5. Thereafter, the Michigan Supreme Court reversed this Court's decision in *DeRuiter*. *DeRuiter v Byron Twp*, 505 Mich 130; 949 NW2d 91 (2020). And, subsequently, the Supreme Court vacated our judgment and remanded for reconsideration in light of *DeRuiter*. *Charter Twp of Ypsilanti v Pontius*, ___ Mich ___; 948 NW2d 552 (2020). We now reverse the trial court's order and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Our previous opinion set forth the following relevant factual and procedural background:

> Under the Michigan Zoning Enabling Act (MZEA), MCL 125.3101 *et seq.*, plaintiff adopted zoning ordinance regulations specifying that medical marijuana dispensaries and medical marijuana nurseries were prohibited as "home occupations" in single-family residential districts. Ypsilanti Code §§ 401(6)(c)(7)

and (8).[2]   Relevant to this appeal, the zoning code provided the following definitions:

> *Home occupation*: An occupation carried on by an occupant of a dwelling unit as a secondary use which is clearly subservient to the use of the dwelling for residential purposes.
>
> * * *
>
> *Medical marihuana dispensary*: Any structure used for dispensing marihuana by a primary caregiver or caregivers to one or more qualifying patient(s).  A medical marihuana dispensary does not include a qualifying patient's residence if the marihuana transferred is exclusively for the qualifying patient's use.
>
> *Medical marihuana nursery*: Any structure which is used, intended for use, or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, producing, processing, preparing, packaging, repackaging, or storing medical marihuana for one or more qualifying patients.  A medical marihuana nursery does not include a qualifying patient's residence if the marihuana is exclusively for the qualifying patient's use. [Ypsilanti Code § 201.]

Although plaintiff's zoning code did not permit a medical marijuana dispensary or nursery in a residentially zoned district, such uses were permitted in districts zoned for light industrial use, subject to special conditions.  Ypsilanti Code § 1402(8).

---

[2] We note that the Ypsilanti zoning code was substantially amended by Ypsilanti Ordinance No. 2018-476, effective March 1, 2018. . . .  Although the code has been largely reorganized, the substance of the relevant provisions remains the same.  See current Ypsilanti Zoning Code §§ 201 (defining relevant terms), 306(3) (providing schedule of uses for residential districts), 306(6) (providing schedule of uses for industrial districts), 1802(c)(7) (prohibiting medical marihuana dispensaries as home occupations), and 1802(c)(8) (prohibiting medical marihuana nurseries as home occupations), 1841 (stating specific use conditions applicable to medical marihuana dispensaries and nurseries), and 3100 through 3103 (providing penalties for violations of zoning code).  All citations to the Ypsilanti zoning code in the body of this opinion refer to the relevant provisions as codified before the 2018 amendment.

---

Plaintiff's zoning code provides civil penalties for violations as follows:

> Any person, firm or corporation violating any provision of this ordinance shall be responsible for a civil infraction and shall be subject to a fine as follows:
>
> (1) The fine for any first violation shall be $100.00;
>
> (2) The fine for any violation which the violator has, within the past two years, been found in violation of once before, shall be $250.00;
>
> (3) The fine for any violation which the violator has, within the past two years, been found in violation of twice before, shall be $500.00. [Ypsilanti Code § 3100.]

In addition, property uses in violation of plaintiff's zoning code could be declared a public nuisance that could be abated by order of any court of competent jurisdiction. Ypsilanti Code § 3101. Under §§ 3102 and 3103, owners of properties that violated plaintiff's zoning use restrictions were subject to fines that were imposed for each day that a violation occurred.

Plaintiff initiated this action for declaratory and injunctive relief against defendant, Judith Pontius, a registered medical marijuana primary caregiver and qualified patient, to abate a public nuisance at her residential property located within the township, alleging that she grew medical marijuana in her basement for her registered qualified patients. According to plaintiff, its zoning code permitted caregivers who were also patients to cultivate medical marijuana in their homes for their personal use, but they could not do so as a "home occupation" for any of their patients.

Both parties moved for summary disposition. Plaintiff argued that, under the MZEA, it was allowed to limit the areas in which caregivers may cultivate medical marijuana for their qualified patients and that its home occupation ordinance did not conflict with the MMMA and, therefore, was not preempted by it. Plaintiff asserted that defendant could not rely on the MMMA's immunity provision because she was operating a commercial medical marijuana operation at her residence, a location it could regulate. Defendant, on the other hand, argued that plaintiff's prohibition of rights and privileges she had under the MMMA as a registered primary caregiver directly conflicted with the MMMA and, therefore, the relevant zoning code provisions were void and unenforceable against her. She also asserted immunity under § 4 of the MMMA. See MCL 333.26424(b). The trial court agreed with defendant and granted summary disposition in her favor. Plaintiff now appeals. [*Ypsilanti Charter Twp*, unpub op at 1-3.]

On appeal, plaintiff argued that the MMMA did not preempt its zoning ordinance because the ordinance did not conflict with the MMMA. *Id.* at 4. We disagreed with plaintiff:

> The precise issue presented in this case was recently decided by another panel of this Court in *De[R]uiter v Byron Twp*, ___ Mich App ___; ___ NW2d ___ (2018) (Docket No. 338972). The defendant township in *De[R]uiter* adopted zoning ordinance regulations that limited the locations in which a registered caregiver could engage in MMMA-compliant activities and provided penalties for ordinance violations. *Id.* at ___; slip op at 1. Specifically, registered caregivers could engage in the medical use of marijuana as a "home occupation," but were prohibited from such activities in commercial properties. *Id.* Much like plaintiff asserts in this case, the defendant argued that its zoning ordinance was not preempted by the MMMA because it merely restricted the location in which MMMA-compliant activities could occur without prohibiting the activities allowed by the MMMA in their entirety. *Id.* at ___; slip op at 2. This Court rejected the defendant township's position, concluding that
>
>> the MMMA permits medical use of marijuana, particularly the cultivation of marijuana by registered caregivers, at locations regardless of land use zoning designations as long as the activity occurs within the statutorily specified enclosed, locked facility. No provision in the MMMA authorizes municipalities to restrict the location of MMMA-compliant medical use of marijuana by caregivers. Neither does the MMMA authorize municipalities to adopt ordinances restricting MMMA-compliant conduct to home occupations in residential locations. So long as caregivers conduct their medical marijuana activities in compliance with the MMMA and cultivate medical marijuana in an "enclosed, locked facility" as defined by MCL 333.26423(d) and do not violate MCL 333.26427(b)'s location prohibitions, such conduct complies with the MMMA and cannot be restricted or penalized. [*Id.* at ___; slip op at 5.]
>
> Accordingly, the Court held that the defendant's zoning ordinance was in direct conflict with, and therefore preempted by, the MMMA because the "prohibition against noncommercial medical use of marijuana by a caregiver within a commercial building effectively denied plaintiff, as a registered caregiver, the rights and privileges that MCL 333.26424(b) permits in conjunction with MCL 333.26423(d)." *Id.* at ___; slip op at 6.
>
> The holding in *De[R]uiter* is directly on point and dispositive of the issue presented in this case. Just like the ordinance at issue in *De[R]uiter*, plaintiff's zoning code attempts to prohibit what the MMMA allows: cultivation and dispensing of medical marijuana as a "home occupation" in a residentially zoned district, regardless of whether the caregiver's activities comply with the MMMA's requirements. Also like the ordinance at issue in *De[R]uiter*, plaintiff's zoning code imposes fines and penalties for ordinance violations, contrary to the MMMA's

immunity provisions. See MCL 333.26424. Consequently, as plaintiff's counsel acknowledged at oral argument, we are bound by the holding in *De[R]uiter*, see MCR 7.215(J)(1), and must conclude that plaintiff's zoning ordinance is preempted by the MMMA because it is in direct conflict with the rights the MMMA grants to individuals engaging in MMMA-compliant activities. [*Id.* at 4-5.]

Plaintiff filed an application for leave to appeal with our Supreme Court. The Court held plaintiff's application in abeyance pending its decision in *DeRuiter*. *Ypsilanti Charter Twp v Pontius*, ___ Mich ___; 925 NW2d 857 (2019). After the Court issued its decision in *DeRuiter*, it issued the following order regarding this case:

[T]he application for leave to appeal the October 30, 2018 judgment of the Court of Appeals was held in abeyance pending the decision in *DeRuiter v Byron Twp*. On order of the Court, the [*DeRuiter*] case having been decided on April 27, 2020, 505 Mich 130; [949 NW2d 91 (2020)], the application is again considered and, pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we VACATE the judgment of the Court of Appeals and we REMAND this case to the Court of Appeals for reconsideration in light of *DeRuiter*. [*Ypsilanti Charter Twp v Pontius*, ___ Mich ___; 948 NW2d 552 (2020).]

Thus, we now consider this case on remand.

## II. DISCUSSION

## A. STANDARD OF REVIEW

We review a trial court's ruling regarding a motion for summary disposition de novo to determine whether the movant was entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). The trial court granted defendant's motion for summary disposition under MCR 2.116(C)(8) and (10).

A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint based upon the pleadings alone. *Id*. at 119-120. "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Id*. at 119. "A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id*. (quotation marks and citation omitted).

A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). In reviewing a motion for summary disposition under MCR 2.116(C)(10), the court considers the pleadings, affidavits, and other documentary evidence filed in the action or submitted by the parties in the light most favorable to the nonmoving party. *Id*. The motion is properly granted if "there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law." *Id*. at 454-455.

We review de novo questions of statutory interpretation. *Nason v State Employees' Retirement Sys*, 290 Mich App 416, 424; 801 NW2d 889 (2010). "Whether a state statute preempts

a local ordinance is a question of statutory interpretation and, therefore, a question of law that we review de novo." *Ter Beek v City of Wyoming*, 297 Mich App 446, 452; 823 NW2d 864 (2012), aff'd 495 Mich 1; 846 NW2d 531 (2014).

## B. ANALYSIS

Pursuant to our Supreme Court's decision in *DeRuiter*, we now conclude that the "locational restriction" in plaintiff's zoning ordinance, which regulates where medical marijuana dispensaries and medical marijuana nurseries may be located, does not directly conflict with the MMMA.

Plaintiff's zoning ordinance prohibits medical marijuana dispensaries and medical marijuana nurseries as "home occupations" in single-family residential districts. Medical marijuana dispensaries and medical marijuana nurseries are permitted in districts zoned for light industrial use, subject to special conditions. The issue before us is whether plaintiff's zoning ordinance, which regulates where medical marijuana dispensaries and medical marijuana nurseries may be located, is preempted by the MMMA.

The MMMA affords certain protections under state law for the medical use of marijuana. *DeRuiter*, 505 Mich at 141, citing MCL 333.26424. The phrase "medical use of marihuana" is defined as "the acquisition, possession, cultivation, manufacture, extraction, use, internal possession, delivery, transfer, or transportation of marihuana, marihuana-infused products, or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition." MCL 333.26423(h). Under the MMMA, a primary caregiver "is not subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action . . . for assisting a qualifying patient . . . with the medical use of marihuana in accordance with this act." MCL 333.26424(b). The MMMA conditions the grant of immunity on the primary caregiver keeping the marijuana plants in "an enclosed, locked facility." MCL 333.26424(b)(2).

Local units of government may control and regulate matters of local concern when such power is conferred by the state. *DeRuiter*, 505 Mich at 140. Under the MZEA, local units of government "may provide by zoning ordinance for the regulation of land development . . . and regulate the use of land and structures[.]" MCL 125.3201(1).

State law may preempt a local regulation either expressly or by implication. *DeRuiter*, 505 Mich at 140. "Implied preemption can occur when the state has occupied the entire field of regulation in a certain area (field preemption) or when a local regulation directly conflicts with state law (conflict preemption)." *Id*. The instant case concerns conflict preemption. "[A] direct conflict exists when the ordinance permits what the statute prohibits or the ordinance prohibits what the statute permits." *Id*. (quotation marks omitted).

In *Ter Beek*, 495 Mich at 5-6 (*Ter Beek II*), the defendant city adopted a zoning ordinance that prohibited all uses contrary to federal, state, or local law. Federal law prohibited the manufacture, distribution, and possession of marijuana. *Id.* at 9. The parties did not dispute that the defendant city's ordinance incorporated the federal law prohibition of marijuana, nor did they

dispute that violations of the prohibition were punishable by civil sanctions and subject to injunctive relief. *Id.* at 9-10. Our Supreme Court held that the defendant city's ordinance directly conflicted with the MMMA because it "permit[ed] what the MMMA expressly prohibit[ed]—the imposition of a 'penalty in any manner' on a registered qualifying patient whose medical use of marijuana falls within the scope of § 4(a)'s immunity." *Id.* at 20, 24 ("The Ordinance directly conflicts with the MMMA . . . because it permits registered qualifying patients, such as [the plaintiff], to be penalized by the City for engaging in MMMA-compliant medical marijuana use. Section 4(a) of the MMMA expressly prohibits this.").

In *DeRuiter*, 505 Mich 134-136 & n 5, our Supreme Court addressed whether a "locational restriction," a phrase which it used "to denote a zoning restriction that regulates where an activity may occur within a municipality," directly conflicted with the MMMA. The defendant township's zoning ordinance allowed for the cultivation of medical marijuana by primary caregivers but only as "a home occupation." *Id.* at 136 (quotation marks omitted). Under the home-occupation requirement, the ordinance mandated that "the 'medical use' of marijuana by a primary caregiver be 'conducted entirely within a dwelling or attached garage[.]'" *Id.* (citation omitted). The plaintiff, a licensed qualifying patient and a registered primary caregiver, began growing marijuana on rented commercially zoned property because she did not want to grow marijuana at her residence. *Id.* at 135. At the rented commercially zoned property, the plaintiff grew the marijuana in "an 'enclosed, locked facility.'" *Id.* After learning about the plaintiff's operation, the defendant township's supervisor determined that the operation violated the defendant township's zoning ordinance. *Id.* The defendant township sent the plaintiff's landlord a letter, directing the landlord to cease and desist the plaintiff's cultivation of marijuana and to remove all marijuana and related equipment or be subject to enforcement action. *Id.* at 137. The plaintiff filed a complaint and sought a declaratory judgment that the zoning ordinance was preempted by the MMMA and, therefore, unenforceable. *Id.* The defendant township filed a counterclaim, requesting a declaratory judgment and abatement of the alleged nuisance. *Id.*

Our Supreme Court held that the MMMA does not nullify a local unit of government's authority to regulate land use under the MZEA so long as the unit of government does not prohibit or penalize all medical marijuana cultivation, like the defendant city's zoning ordinance did in *Ter Beek II*, and so long as the unit of government "does not impose regulations that are 'unreasonable and inconsistent with regulations established by state law.'" *DeRuiter*, 505 Mich at 148. The Court distinguished the defendant township's ordinance from the ordinance in *Ter Beek II*:

> The zoning ordinance in *Ter Beek II* prohibited land uses that were contrary to federal law and subjected such land uses to civil sanctions. Because the manufacture and possession of marijuana is prohibited under federal law, the [zoning] ordinance at issue in *Ter Beek II* had the effect of banning outright the medical use of marijuana in the city. As a result, there was no way that patients and caregivers could engage in the medical use of marijuana under the MMMA without subjecting themselves to a civil penalty.
>
> [The defendant's] ordinance is different than the ordinance we considered in *Ter Beek II*. It allows for the medical use of marijuana by a registered primary caregiver but places limitations on where the caregiver may cultivate marijuana

within the township (i.e., in the caregiver's "dwelling or attached garage" as part of a regulated "home occupation"). [*DeRuiter*, 505 Mich at 142.]

The Court noted that, despite the differences in the ordinances, the plaintiff argued that the defendant township's ordinance directly conflicted with the MMMA because the MMMA "protects a registered caregiver from 'penalty in any manner' for 'assisting a qualifying patient . . . with the medical use of marihuana' so long as the caregiver abides by the MMMA's volume limitations and restricts the cultivation to an 'enclosed, locked facility.' " *Id*. at 142-143. The Court disagreed with this argument:

> Admittedly, our preemption analysis in *Ter Beek II* considered the MMMA's prohibition on the imposition of a "penalty in any manner." *Ter Beek II*, 495 Mich at 24. But while we sided with the plaintiff in *Ter Beek II*, we cautioned that "[the plaintiff] does not argue, and we do not hold, that the MMMA forecloses all regulation of marijuana[.]"
>
> Were we to accept [the plaintiff's] argument, the only allowable restriction on where medical marijuana could be cultivated would be an "enclosed, locked facility" as that term is defined by the MMMA. Because the MMMA does not otherwise limit cultivation, the argument goes, any other limitation or restriction on cultivation imposed by a local unit of government would be in conflict with the state law. We disagree. The "enclosed, locked facility" requirement in the MMMA concerns what type of structure marijuana plants must be kept and grown in for a patient or caregiver to be entitled to the protections offered by MCL 333.26424(a) and (b); the requirement does not speak to *where* marijuana may be grown. In other words, because an enclosed, locked facility could be found in various locations on various types of property, regardless of zoning, this requirement is not in conflict with a local regulation that limits *where* medical marijuana must be cultivated. [*DeRuiter*, 505 Mich at 143-144 (citations omitted).]

According to the Court, this result was not at odds with *Ter Beek II*. *DeRuiter*, 505 Mich at 144. A local ordinance is preempted when it bans an activity that is authorized and regulated by state law, and this is what the ordinance in *Ter Beek II* did. *DeRuiter*, 505 Mich at 144-145. That ordinance "had the effect of wholly prohibiting an activity (the medical use of marijuana) that the MMMA allows." *Id*. But this did not mean that a local unit of government "cannot 'add to the conditions' in the MMMA." *Id*. at 145. The Court then wrote:

> [The plaintiff's] argument would result in an interpretation of the MMMA that forecloses all local regulation of marijuana—the exact outcome we cautioned against in *Ter Beek II*. See *Ter Beek II*, 495 Mich at 24 n 9. [The plaintiff] nevertheless emphasizes our statement that "the [defendant city's] Ordinance directly conflicted with the MMMA by permitting what the MMMA expressly prohibits—the imposition of a 'penalty in any manner' on a registered qualifying patient whose medical use of marijuana falls within the scope of § 4(a)'s immunity." *Id*. at 20. We appreciate the apparent contradiction and take this opportunity to clarify. Our analysis in *Ter Beek II*—in particular, our focus on whether the MMMA permitted the city to impose a sanction for violating the

-8-

[defendant city's] ordinance—suggested that the MMMA's immunity language was the source of the conflict. That was true in *Ter Beek II* because the ordinance left no room whatsoever for the medical use of marijuana.

> In *Ter Beek II*, the conflict giving rise to that preemption can be viewed as whether the [defendant city] had completely prohibited the medical use of marijuana that the electors intended to permit when they approved the MMMA. That view meshes with our case law . . . . More recently, we declined to find a conflict between state and local law when a locality enacted regulations that are not "unreasonable and inconsistent with regulations established by state law," so long as the state regulatory scheme did not occupy the field. *Detroit v Qualls*, 434 Mich 340, 363; 454 NW2d 374 (1990) (holding that a city ordinance regulating the quantity of fireworks a retailer may store was not in conflict with a state law that limited possession to a "reasonable amount"). Similarly, in *Miller v Fabius Twp Bd*, 366 Mich 250, 255-257; 114 NW2d 205 (1962), we held that a local ordinance that prohibited powerboat racing and water skiing between the hours of 4:00 p.m. and 10:00 a.m. was not preempted by a state law that prohibited " 'during the period 1 hour after sunset to 1 hour prior to sunrise.' " [*DeRuiter*, 505 Mich at 145-146].

The Court also noted that, in *Qualls* and *Miller*, it had favorably quoted the following proposition:

> The fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith, unless the statute limits the requirement for all cases to its own prescription. Thus, where both an ordinance and a statute are prohibitory and the only difference between them is that the ordinance goes further in its prohibition, but not counter to the prohibition under the statute, and the municipality does not attempt to authorize by the ordinance what the legislature has forbidden or forbid what the legislature has *expressly* licensed, authorized, or required, there is nothing contradictory between the provisions of the statute and the ordinance because of which they cannot coexist and be effective. [*DeRuiter*, 505 Mich at 146.]

"Under this rule, an ordinance is not conflict preempted as long as its additional requirements do not contradict the requirements set forth in the statute." *Id*. at 147.

The Court held that there was no contradiction between the MMMA and the defendant township's ordinance. *Id*. The "locational restriction" added to and complemented the limitations imposed by the MMMA. *Id*. While the ordinance went further in its regulation, it did not do so in a manner that was counter to the MMMA's conditional allowance on the medical use of marijuana. *Id*. at 147-148. According to the Court, the defendant township "appropriately used its authority under the MZEA to craft a zoning ordinance that does not directly conflict with the MMMA's provision requiring that marijuana be cultivated in an enclosed, locked facility." *Id*. at 148.

In this case, plaintiff's zoning ordinance contains a "locational restriction." It regulates where primary caregivers may operate medical marijuana dispensaries and medical marijuana

nurseries.  See *id*. at 136 n 5.  We conclude that this locational restriction does not directly conflict with the MMMA.  First, unlike the ordinance in *Ter Beek II*, plaintiff's ordinance does not prohibit or penalize all cultivation of medical marijuana.  *See DeRuiter*, 505 Mich at 142, 145-146.  The ordinance at issue here only limits where a primary caregiver may operate a medical marijuana dispensary or medical marijuana nursery.  Second, plaintiff did not impose regulations that are unreasonable and inconsistent with regulations established by state law.  *See id*. at 146-147.  Like the ordinance in *DeRuiter*, the "locational restriction" in plaintiff's ordinance adds to and complements the limitations imposed by the MMMA; and therefore, it does not contradict the MMMA.  *See id*. at 147-148.  While the zoning ordinance goes further in its regulation of the medical use of marijuana, it does not do so in a manner that is counter to the MMMA's conditional allowance on the medical use of marijuana.

Accordingly, pursuant to our Supreme Court's decision in *DeRuiter*, we hold that plaintiff's ordinance does not directly conflict with the MMMA.  We thus reverse the trial court's order determining that the ordinance directly conflicts with the MMMA and remand for further proceedings consistent with this opinion.

We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Jane E. Markey
/s/ Anica Letica