*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TROY STEPHENS, CHRISTOPHER MEDINA, PATRICK GIDDIS, ERIC SEAR, ILLIYAS WATSON, and JEFFREY STONECHIPHER,

Plaintiffs-Appellants,

v

DEPARTMENT OF CORRECTIONS,

Defendant-Appellee,

and

ROBERT LINCOLN,

Defendant.

FOR PUBLICATION
October 20, 2025
2:20 PM

No. 368097
Ingham Circuit Court
LC No. 20-000540-NZ

Before: GADOLA, C.J., and MURRAY and YATES, JJ.

MURRAY, J.

In this appeal, plaintiffs challenge the circuit court order granting defendant the Michigan Department of Corrections' (MDOC) motion for summary disposition under MCR 2.116(C)(7), on the basis that plaintiffs failed to comply with the notice requirement under the Court of Claims Act (COCA), MCL 600.6431. Because plaintiffs indisputably did not file a notice of intent to sue, and because none of plaintiffs' arguments seeking to avoid application of binding caselaw and the mandatory requirements of the statute have merit, we affirm.

## I. BACKGROUND

Plaintiffs are prisoners who are currently incarcerated in an MDOC facility. They brought a three-count complaint in the circuit court against the MDOC and a corrections officer, Robert Lincoln. Relevant to this appeal, the complaint alleges one count of sex discrimination under MCL 37.2302(a) of the Elliot-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.*, against both

-1-

Lincoln and the MDOC.[1] Almost three years after plaintiffs filed their complaint, *Christie v Wayne State Univ*, 511 Mich 39, 44-45; 993 NW2d 203 (2023), was released, holding in relevant part that the COCA notice provision, MCL 600.6431, applied to actions against the state or an arm of the state that were filed in circuit court. The *Christie* decision overruled *Tyrrell v Univ of Mich*, 335 Mich App 254; 966 NW2d 219 (2020), which had concluded that the COCA's notice requirements "apply only to claims initiated against the state in the Court of Claims." *Christie*, 511 Mich at 44.

Because there was no dispute that plaintiffs never filed a notice of intent under MCL 600.6431, after *Christie* was issued, the MDOC moved for summary disposition with regard to the ELCRA claim. The trial court granted summary disposition after concluding that plaintiffs failed to comply with MCL 600.6431 and that *Christie* applied retroactively. We then granted plaintiffs' application for leave to appeal. *Stephens v Dep't of Corrections*, unpublished order of the Court of Appeals, entered November 27, 2023 (Docket No. 368097).

## II. ANALYSIS

In seeking to overturn the circuit court order, plaintiffs make four arguments: (1) that *Christie* should not be applied retroactively; (2) that the MDOC waived the statutory notice defense through its delay in raising it during litigation; (3) that the notice provision is preempted by the federal Prison Rape Elimination Act (PREA), 34 USC 30301 *et seq.*; and (4) that other equitable doctrines—laches, unclean hands and the like—preclude invocation of the defense by the MDOC. We address these arguments *seriatim*, and in doing so apply de novo review, *Forton v St Clair Co Pub Guardian*, 339 Mich App 73, 82; 919 NW2d 659 (2018), to determine whether, under MCR 2.116(C)(7), "[e]ntry of judgment, dismissal of the action, or other relief is appropriate because of . . . immunity granted by law . . . ."

### A. *CHRISTIE* RETROACTIVITY

As the parties recognized at oral argument, the conflict panel opinion in *Hudson v Dep't of Corrections (Hudson II)*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 367902); slip op at 5-6, lv pending, held that *Christie* applies retroactively to all pending cases, consistent with the prior decision in *Flamont v Dep't of Corrections*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367863); slip op at 6, lv pending. In doing so, the Court specifically rejected another panel's conclusion, in *Landin v Dep't of Health and Human Servs*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367356); slip op at 2, lv pending, that *Christie* did not apply retroactively to "post-*Tyrrell*/pre-*Christie* cases," because the plaintiff had relied on *Tyrrell* and "the decision in *Christie* was a new rule of law as to it and similarly-situated cases." *Hudson II*, ___ Mich App at ___; slip op at 2, 5-6. *Hudson II* precludes any relief to plaintiffs on their retroactivity argument.[2]

---

[1] Defendant Robert Lincoln is not involved in this appeal.

[2] Even if *Landin* remained good law, plaintiffs' circumstances are distinguishable from *Landin* because plaintiffs filed their claims on September 30, 2020, and *Tyrrell* was decided on December 22, 2020. Therefore, this is a pre-*Tyrrell* case that is procedurally similar to the posture of the

## B. WAIVER OF MCL 600.6431

Although plaintiffs concede that they did not comply with the COCA's notice provision, MCL 600.6431, they nevertheless argue that the MDOC's delay in raising lack of statutory notice as grounds for summary disposition was barred by the so-called waiver-in-litigation doctrine recognized in federal court. See *Lapides v Bd of Regents of Univ Sys of Ga*, 535 US 613, 621-622; 122 S Ct 1640; 152 L Ed 2d 806 (2002) (holding that a state waives Eleventh Amendment immunity by appearing in federal court). According to plaintiffs, this doctrine is a common-law exception to the background rule of absolute sovereign immunity. See *Progress Mich v Attorney General*, 506 Mich 74, 87 n 6; 954 NW2d 475 (2020). This argument is misplaced, as it is inconsistent with settled caselaw and the court rules.

As the MDOC correctly notes, "governmental immunity is not an affirmative defense, but is instead a characteristic of government." *Fairley v Dep't of Corrections*, 497 Mich 290, 298; 871 NW2d 129 (2015). Although *Fairley* was decided in the context of a claim under the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, *Fairley*, 497 Mich at 292, *Christie* cited *Fairley* in support of the underlying principle that MCL 600.6431 operates as "a precondition to suing the state," *Christie*, 511 Mich at 50-51, citing *Fairley*, 497 Mich at 300. As the *Christie* Court recognized, the state enjoys sovereign immunity and it determines when it can be sued, and under what conditions. *Christie*, 511 Mich at 48-49. One of those conditions that must be complied with before suing the state is the notice requirement contained in MCL 600.6431, which "sets forth a general rule that a party must follow, regardless of forum, if that party is to overcome immunity and bring the state before a court." *Id.* at 61. As we have stated before, "Section 6431(3) is an unambiguous 'condition precedent to sue the state,' and a claimant's failure to comply strictly with this notice provision warrants dismissal of the claim, even if no prejudice resulted." *Rusha v Dep't of Corrections*, 307 Mich App 300, 307; 859 NW2d 735 (2014), quoting *McCahan v Brennan*, 291 Mich App 430, 433; 804 NW2d 906 (2011), aff'd 492 Mich 730 (2012), and citing *McCahan v Brennan*, 492 Mich 730, 746-747; 822 NW2d 747 (2012). There are no statutory exceptions to compliance with the notice provision, and no statutory time period for when the defense of lack of compliance can be raised.

The court rules also support the conclusion that governmental immunity is not an affirmative defense that must be raised or waived. Specifically, MCR 2.116(D) governs the time allowed to raise the various grounds for summary disposition under MCR 2.116(C), whereas MCR 2.116(D)(1) "provides that certain defenses are permanently waived if not timely presented," *Leite v Dow Chemical Co*, 439 Mich 920, 920 (1992).[3] The notice provision is an integral component and precondition to being able to sue the state, as this provision "establishes conditions precedent for avoiding the governmental immunity conferred by the GTLA, which expressly incorporates

---

plaintiff in *Christie*, who also filed suit pre-*Tyrrell*. See *Landin*, ___ Mich App at ___; slip op at 5-6. Accordingly, not only is *Landin* no longer good law, see *Hudson II*, ___ Mich App at ___; slip op at 6, but the situation presented here is not the same as in *Landin*.

[3] An order of the Supreme Court is binding precedent if "it constitutes a final disposition of an application and contains a concise statement of the applicable facts and reasons for the decision." *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich. 359, 369; 817 NW2d 504 (2012).

MCL 600.6431." *Fairley*, 497 Mich at 297. MCR 2.116(D)(3) provides that governmental immunity, the ground asserted here, "may be raised at any time," even after expiration of a scheduled deadline for dispositive motions. This court rule reflects the long-standing principle that the state " 'is immune from suit unless it consents, and that any relinquishment of sovereign immunity must be strictly interpreted.' " *Christie*, 511 Mich at 57, quoting *Pohutski v City of Allen Park*, 465 Mich 675, 681; 641 NW2d 219 (2002). In other words, both caselaw and the court rules allow the state to invoke immunity-based defenses at any time during litigation.

The federal cases relied upon by plaintiffs are inapplicable because the state's obligation to raise Eleventh Amendment immunity when sued in federal court is different from raising a statutory defense in state court based upon Michigan's sovereign immunity. Under federal constitutional law, a state waives its Eleventh Amendment immunity by unequivocally expressing its consent to be sued in federal court, *Edelman v Jordan*, 415 US 651, 673; 94 S Ct 1347; 39 L Ed 2d 662 (1974), such as when a state removes a case from state to federal court, see *Lapides*, 535 US at 621-622. But merely waiting to pursue a motion to dismiss based on that immunity until the litigation is well under way does not by itself constitute an express waiver of Eleventh Amendment immunity. See *Raygor v Regents of the Univ of Minnesota*, 534 US 533, 546; 122 S Ct 999; 152 L Ed 2d 27 (2002). That federal principle has no bearing on when the state is being sued in its own forum and raises the application of clear, straightforward statutory rules setting forth preconditions to suing the state. In the end, it is simply a matter of two different forums applying different rules for when, or if, immunity can be raised or waived.

We likewise reject plaintiffs' reliance on *Progress Mich* as providing a foundation for an equitable exception to strict compliance with the statutory notice provision. As the Court made clear some three years later, "*Progress Mich* did not purport to detract from our jurisprudence requiring complete compliance with MCL 600.6431 to maintain a claim against the state." *Elia Cos, LLC v Univ of Mich Regents*, 511 Mich 66, 74; 993 NW2d 392 (2023).

## C. FEDERAL PREEMPTION

We also reject plaintiffs' argument that the notice standards codified in the PREA, preempt the COCA's notice obligations. The PREA's notice requirements apply to claims covered by the PREA, and state-law claims that are filed in compliance with the COCA, like claims under the ELCRA against the state, are not covered by the PREA.

Whether federal law preempts state action, as well as the interpretation of a statute, are questions of law reviewed de novo. *Foster v Foster*, 505 Mich 151, 165; 949 NW2d 102 (2020). "Federal preemption of state law is grounded in the Supremacy Clause of the United States Constitution, US Const, art VI, cl 2, which 'invalidates state laws that "interfere with, or are contrary to," federal law,' " *Ter Beek v City of Wyoming*, 495 Mich 1, 10; 846 NW2d 531 (2014), quoting *Hillsborough Co v Automated Med Labs, Inc*, 471 US 707, 712; 105 S Ct 2371; 85 L Ed 2d 714 (1985). "When a state law is preempted by federal law, the state law is 'without effect.' " *Ter Beek*, 495 Mich at 10, quoting *Maryland v Louisiana*, 451 US 725, 746; 101 S Ct 2114; 68 L Ed 2d 576 (1981).

"The purpose of Congress is the ultimate touchstone in every pre-emption case." *Ter Beek*, 495 Mich at 10 (quotation marks, citation, and alteration omitted). "Furthermore, in all pre-

emption cases, and particularly in those in which Congress has legislated . . . in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id*. at 10-11 (quotation marks, citation, and alteration omitted). See also *Maryland*, 451 US at 746 ("Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law."). "The areas of public health and safety are among those traditionally left to the states." *Ter Beek*, 495 Mich at 11. If the relevant federal statute contains an express preemption provision, the reviewing court begins with the "plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Id*. (quotation marks and citations omitted). "Where such a clause is ambiguous, and the federal statute at issue pertains to an area of traditional state regulation, we have a duty to accept the reading of the clause that disfavors pre-emption. Tie, in that case, goes to the state." *Id*. at 11 (quotation marks, citation, and alteration omitted).

Plaintiffs assert that the PREA preempts the COCA's notice requirement with regard to claims of prison rape and sexual abuse. To begin, the PREA does not contain an express preemption provision. Congress found that the "effectiveness and efficiency" of federal grant programs was "compromised by the failure of State officials to adopt policies and procedures that reduce the incidence of prison rape." 34 USC 30301(14). The purpose of the Act was not to preempt state procedures for dealing with such claims; rather, the purpose of the PREA was to "increase the accountability of prison officials," protect "Federal, State, and local" prisoners' Eighth Amendment rights, and "increase the efficiency and effectiveness of Federal expenditures through grant programs." 34 USC 30302(6) through (8). To that end, the remedial aim of the Act was not to preempt state procedures but to reduce a state's federal funding "for prison purposes" by 5% unless the state certifies that it was or would soon be complying with certain national standards set forth by the Attorney General of the United States. 34 USC 30307(a)(1) and (e)(2). There is no indication whatsoever in the text of the PREA that Congress unambiguously intended to preempt Michigan's strict notice requirements for filing state law claims against the state in state court.

Despite the lack of express congressional intent to do so, plaintiffs contend that the federal regulations promulgated according to the PREA, 34 USC 30307(e)(6), render the COCA's notice provisions void. Specifically, plaintiffs argue that 28 CFR 115.52(b)(1), which states that agencies like the MDOC "shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse," conflicts with the notice provisions of MCL 600.6431. But plaintiffs do not allege that the MDOC prevented them from filing any sexual abuse grievances because of time limits, and internal MDOC grievance procedures have nothing to do with the state law requirement for proceeding in court against the state. See *Ter Beek*, 495 Mich at 12. Indeed, 28 CFR 115.52(b)(4) supports this notion, stating, "Nothing in this section shall restrict the agency's ability to defend against an inmate lawsuit on the ground that the applicable statute of limitations has expired." And 28 CFR 115.52(b)(1) does not present a "direct and positive conflict" with MCL 600.6431, because a prisoner's compliance with the notice provisions does not impair a prisoner's ability to file internal MDOC grievances. *Ter Beek*, 495 Mich at 12

(quotation marks and citation omitted).[4]  Nothing within the PREA or its regulations speak to statutes like MCL 600.6431, and the PREA therefore has no preemptive impact on its application in state court.

## D. OTHER EQUITABLE DOCTRINES

For their final argument, plaintiffs assert that the MDOC's delay in raising the notice requirement warrants application of equitable doctrines that would allow plaintiffs to maintain their claim against the MDOC despite their noncompliance with the notice provision.

Before analyzing the particular doctrines raised by plaintiffs, we point out—as did the trial court—that principles of equity do not apply when a statute governs the issue, as it does here. *Senters v Ottawa Savings Bank, FSB*, 443 Mich 45, 56; 503 NW2d 639 (1993) ("Where . . . a statute is applicable to the circumstances and dictates the requirements for relief by one party, equity will not interfere.").  As the trial court aptly noted, relying on *Senters*, "[i]f a court . . . is free to cast aside, under the guise of equity, a plain statute, simply because the court views the statute as unfair, then our system of government ceases to function as a representative democracy." This principle is the Plymouth Rock of our American rule of law, where written laws prevail over the subjective views of judges.  *Marbury v Madison*, 5 US 137, 163; 2 L Ed 60 (1803) ("The government of the United States has been emphatically termed a government of laws, and not of men.").  Thus, we cannot by judicial fiat graft equitable exceptions onto clear statutory mandates, even those premised on unfair prejudice to a party.  See *Elia Cos, LLC*, 511 Mich at 74 ("[U]nder our well-established jurisprudence, a party bringing suit against the state must fully comply with the terms of MCL 600.6431, regardless of a finding of prejudice.").  Nevertheless, for the sake of completeness, we will address the two doctrines of equity raised by plaintiffs as a means to avoid application of MCL 600.6431.

## 1. LACHES

This Court has explained:

Estoppel by laches results from the failure to do something which should be done under the circumstances or the failure to claim or enforce a right at a proper time. A party guilty of laches is estopped from asserting a right it could have and should have asserted earlier.  To successfully assert laches as an affirmative defense, a defendant must demonstrate prejudice occasioned by the delay. [*New Prod Corp v Harbor Shores BHBT Land Dev, LLC*, 331 Mich App 614, 626-627; 953 NW2d 476 (2020) (quotation marks and citations omitted).]

---

[4] Plaintiffs also cite *Jones v Bock*, 549 US 199, 205, 211-212; 127 S Ct 910; 166 L Ed 2d 798 (2007) (discussing exhaustion of administrative remedies and notice in the context of the Prisoner Litigation Reform Act, 42 USC 1997e, *et seq*.), as evidence that the MDOC's grievance process has placed the MDOC on actual notice of plaintiffs' claims.  However, the Legislature has required strict compliance with MCL 600.6431 to invoke the COCA's limited waiver of immunity.  See *Christie*, 511 Mich at 63-64.  Actual notice is not enough to comply with MCL 600.6431. *Id.*

Plaintiffs contend that the MDOC's belated invocation of immunity after years of expensive litigation prejudiced them; and, if the MDOC believed that notice had not been provided, it should have sought dismissal on that ground at the outset of the lawsuit.

But as we have pointed out, the statute contains no time limitation for raising failure to comply, and the court rules and caselaw *allow* the issue to be raised at any time. *Christie*, 511 Mich at 57. Accordingly, laches cannot be applied to bar defendant from raising plaintiffs' failure to file a notice of intent to sue because Michigan law does not recognize a "proper time" that immunity ought to be raised. See *New Prod*, 331 Mich App at 626-627.

## 2. UNCLEAN HANDS

In a similar argument, plaintiffs contend that the doctrine of unclean hands warrants reversal because the MDOC engaged in bad faith by fully litigating the case while asserting immunity on the eve of trial.

The unclean-hands doctrine prevents a party from invoking equity in a matter "tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *New Prod*, 331 Mich App at 627 (quotation marks and citation omitted). "Any willful act that transgresses equitable standards of conduct is sufficient to allow a court to deny a party equitable relief." *Id*. Here, the MDOC was not invoking equity when raising the statutory defense of lack of notice. Instead, it was invoking a statutory defense. For that reason alone, the unclean-hands doctrine does not apply. And even if it did, there is no record evidence that the MDOC intentionally waited until *Christie* was decided to invoke immunity or that the MDOC willfully transgressed equitable standards of conduct by so waiting. See *id*. Rather, the MDOC invoked immunity after *Christie* held that MCL 600.6431 applied to claims in circuit court. Plaintiffs have not pointed to any facts beyond the mere timing of the MDOC's invocation of immunity to demonstrate that the MDOC operated in bad faith by invoking immunity when it did; therefore, the unclean-hands doctrine does not warrant reversal.

Affirmed.

/s/ Christopher M. Murray
/s/ Michael F. Gadola
/s/ Christopher P. Yates